STATE OF NEBRASKA, APPELLEE, V.
FREDERICK WHITE, APPELLANT.

306 N.W.2d 906

Filed June 19, 1981. No. 43573.

Dennis R. Keefe, Lancaster County Public Defender, and Michael D. Gooch for appellant.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The defendant was tried before a jury on a charge of escape from official detention. Neb. Rev. Stat. § 28-912 (Reissue 1979). The information alleged that on a certain date the defendant unlawfully removed himself from official detention while he was under arrest for a felony. He was also charged with being an habitual criminal. He was found guilty by the jury on the charge of the escape and by the court on the habitual criminal

charge, and sentenced to a term of 10 years' imprisonment.

On appeal to this court, he assigns and argues the following claims of error: (1) The evidence was insufficient to support the finding of guilt on the escape charge and the court erred in not granting the defendant's motion for a directed verdict; (2) The instruction defining arrest was erroneous; (3) The defendant was denied a fair trial because of repeated references during trial to the reason for the arrest; (4) The court erred in not granting the defendant's request for an instruction permitting the jury to find the defendant guilty of "the lesser-included offense" of resisting arrest; and (5) The court erred in finding the defendant guilty on the habitual criminal charge because the habitual criminal statute is unconstitutional as applied.

The first two assignments are closely related and may be conveniently considered together.

Section 28-912, insofar as applicable here, provides that "[a] person commits escape if he unlawfully removes himself from official detention . . . . Official detention shall mean arrest . . . ." The defendant argues that the evidence was insufficient to permit the jury to find that the defendant was under arrest at the time of his "escape," and that in the instruction to the jury defining arrest, the court should have included, in accordance with the defendant's request, the words, "mere words are not enough" to constitute an arrest. He does not otherwise attack the instruction. The instruction given was the following: "Arrest: An arrest is taking custody of another person for the purpose of holding or detaining him to answer a criminal charge. It is defined as the taking, seizing, or detaining of the person of another, (1) by touching or putting hands on him; (2) or by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested.

"To effect an arrest, there must be actual or con-

structive seizure or detention of the person arrested, or his voluntary submission to custody, and the restraint must be under real or pretended legal authority. There can be no arrest where there is no restraint or where the person sought to be arrested is not conscious of any restraint. If the person arrested understands that he is in the power of the one arresting and submits in consequence, it is not necessary that there be an application of actual force, in manual touching of the body, or a physical restraint that may be visible to the eye. The act relied upon as constituting an arrest must have been performed with the intent to effect an arrest and must have been so understood by the party arrested. In all cases in which there is no manual touching or seizure, or any resistance, the intention of the parties are important. There must have been the intention on the part of one of them to arrest the other and the intent on the part of the other to submit, under the belief and impression that submission was necessary. However, no formal declaration of arrest is required."

The arresting officer, Spanel, testified that he and a fellow officer, both in plain clothes and in an unmarked car, were making an investigation of a sexual assault alleged to have occurred earlier. Their particular assignment was to procure an identification of the suspect who had been described by the victim as a black male in his 20s, bearded, height 5 feet 6 inches to 5 feet 9 inches, and weighing 140 to 160 pounds. The suspect also had upon his left forearm some unusual markings consisting of scar tissue or other unusual discoloration of the skin. The officers had a composite drawing of the facial features of the suspect made from information given by the victim. The suspect wore metal-rimmed spectacles.

At about 9:55 p.m. on August 17, 1979, the two officers were operating in the neighborhood of 24th and Q Streets in the city of Lincoln. Officer Spanel was seated in the automobile. His companion officer was at an apartment in the vicinity to check out information

they had received from a member of the black community a short time earlier. While Spanel was seated in the automobile he observed two black males, one of whom was the defendant White, approach on 24th Street. When they neared the automobile Spanel called to them, asking: "Have you guys got a minute?" The two young men came toward the car. Spanel got out of the vehicle and identified himself as a police officer by showing his official identification card and badge. He then explained that he was investigating a sexual assault and handed to defendant's companion, Nevins, the composite drawing and asked if he could identify the individual or knew anyone looking like the picture. Nevins indicated he could not. Then either Nevins or the officer handed the drawing to defendant. As defendant extended his arm to take the photograph, his forearm projected from underneath his sleeve and Spanel observed on the forearm markings which resembled those which the victim had described. Defendant otherwise matched the description of the suspect. Spanel, without waiting for comment by defendant, took back the photograph and immediately announced that defendant was under arrest for a felony offense, describing it by name, and indicated that he would have to come to headquarters.

At this time arises a conflict in the evidence. Spanel testified that he reached into the car for his radio transmitter and sent a message asking for assistance. At about the same time he called to Officer Lutz, his companion, to assist him. All of this, he said, took from 15 to 30 seconds, during which time defendant remained in position. When Spanel turned back toward defendant, the latter struck him twice with his fist, once in the face and once on the shoulder. Defendant did not testify. Nevins testified that Spanel asked them both to look at the picture and asked if they knew anyone or had seen anyone who looked like that. Nevins responded "no." Defendant reached out and took the picture. As he did so Spanel announced that he was going to take de-

fendant down to the station. Two or three seconds elapsed and then defendant struck the officer twice and fled. It was not until after that that the officer reached into the car and called for a backup unit.

Spanel testified that he made the call for the backup unit after announcing the arrest because he did not want to transport defendant in an unmarked car. He said he did not attempt to place his hands upon defendant because it was his understanding that some black persons resented being touched in sensitive situations.

Defendant was pursued by Spanel and other officers and surrendered about 2 blocks from the place where the action began. He did so at that time without resistance. The officer who assisted Spanel testified: "I heard a call of an officer in foot pursuit and requesting assistance. It was not clear to me which officer it was." He did not recall hearing other requests, just transmissions indicating direction of travel and location. Defendant argues this conclusively establishes that defendant's version of the order of events is the correct one.

It is not for this court to decide the disputed questions of fact, nor to determine precisely what occurred or the order of events. The only questions before us on the first two assignments are questions of law: First, did the trial court err in not including in instruction No. 9 the phrase, "mere words are not enough" to constitute an arrest? Second, was the evidence sufficient to permit the jury to find that the defendant was under arrest when he fled?

The answer to these questions depends, we believe, for reasons hereinafter set forth, upon what is meant by constructive seizure or detention.

It may seem strange but it is true that even after 200 years of history in this country there is still some dispute about what constitutes an arrest and the legal consequences which flow from it. If anything, the complexities of the problem are increasing; the result, in a

large degree, of the interaction of the law of arrest and exclusionary rules as well as the distinction between an investigative detention and arrest within the meaning of the fourth amendment.

The defendant's contention that he was not under arrest is, in the language of his brief, based on the following premise: "[T]here was a total failure of competent proof to support the material allegations that the defendant was under arrest. Defendant respectfully submits that there was no evidence on which to believe that he was subjected 'to the actual control and will' of Officer Spanel. The only act of dominion or order made by the officer was for defendant to accompany him downtown. The defendant forcefully rejected this request. The defendant did not in fact go with the officer until after the chase.

"Defendant's slight pause before the chase began is hopelessly ambiguous. [Citations omitted.] There is no evidence that defendant understood himself to be in the power of the officer or that he submitted or consented to being restrained."

The instruction earlier quoted and given by the court in this case appears to be essentially the one approved by this court in *Schmidt v. Richman Gordman, Inc.*, 191 Neb. 345, 215 N.W.2d 105 (1974).

All courts agree that one of the elements necessary to effectuate an arrest is "actual or constructive seizure or detention of the person."

We hold that constructive, as distinguished from physical, restraint sufficient to constitute a constructive seizure or detention of an arrestee exists where an officer has the intention to effect an arrest, that intention has in some way been communicated to the arrestee, the arrestee understands that he is under legal restraint, and the officer has the apparent present power to control the person even though he has not yet asserted physical control. *State v. Vaughn*, 12 Ariz. App. 442, 471 P.2d 744 (1970); *State v. Parnell*, 221 So. 2d 129 (Fla. 1969); *Bey v. State*, 355 So. 2d 850 (Fla. App. 1978);

*State v. Rocheleau*, 117 N.H. 792, 378 A.2d 1381 (1977); *State v. Donahue*, 420 A.2d 936 (Me. 1980); *Price v. United States*, 119 A.2d 718 (D.C. 1956).

The evidence in this case was sufficient to permit the jury to find that constructive restraint existed. It is not disputed that the officer announced the arrest and that the physical proximity of the officer and the defendant were such that the officer could have, had he so chosen, attempted to exert physical control; that the defendant knew he was under legal restraint and not free to leave is evidenced by the fact that he obviously felt it necessary to assault the officer in order to effectuate his freedom of movement. A few courts have held that there must exist at least some slight touching by the officer to effectuate an arrest. We reject the necessity of such an act. An arrestee has a legal obligation to surrender himself to an officer who has properly identified himself and has announced the arrest.

Some courts, even those whose definition of effectuating an arrest includes constructive constraint, announce the rule that mere words cannot constitute an arrest. See, e.g., *State v. Powers*, 386 A.2d 721 (Me. 1978). That opinion, however, is somewhat confusing in that it seems to approve a lower court charge that an actual touching is not necessary to effectuate an arrest. Whether or not mere words can constitute constructive restraint will necessarily depend upon the facts of the case. If the circumstances are such that the arresting officer has no reasonable present capability to exercise physical control, then mere words may not constitute a constructive restraint. Under the particular evidence in this case, the court did not err in refusing to include in the instruction the phrase, "mere words cannot constitute an arrest." We note that it is legislative policy that force is not to be used in making an arrest unless the "actor believes that such force is immediately necessary to effect a lawful arrest." Neb. Rev. Stat. § 28-1412(1) (Reissue 1979).

The defendant contends that he was deprived of a fair trial because of testimony that he was arrested for a

felony and by references by the prosecution in argument and in questions that the arrest was for a felony. Defendant's argument is that Neb. Rev. Stat. § 27-404(2) (Reissue 1979), limiting the purposes for which evidence of other crimes is admissible, barred the testimony and the remarks. Section 27-404(2) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

That statute is irrelevant. The court charged the jury on the elements of the crime as follows: "1. That on or about August 17, 1979, the defendant, Fred White, was under official detention on a felony charge in Lancaster County, Nebraska,

"2. That on said date said defendant did unlawfully remove himself from such official detention."

Section 28-912, which defines the crime of escape, provides in subsection (5): "Escape is a Class III felony where: (a) The detainee was under arrest for or detained on a felony charge or following conviction for the commission of an offense . . . ." Except as provided in subsection (5), escape is a Class IV felony. The information had originally charged that he removed himself from official detention while under arrest under a charge of first degree forcible sexual assault. On defendant's motion before trial, the words "first degree forcible sexual assault" were stricken, leaving only the words "on a felony charge."

Being under detention for a felony was an element of the degree of crime charged and it was necessary for the State to prove the same. It was relevant and material that it be proved by the testimony and it was proper to refer to it in questioning and argument. The defendant would have had a right to complain had it not been proved. "It is competent for the prosecution to put in evidence all relevant facts and circumstances which tend to establish any of the constituent elements of the

crime with which the accused is charged even though such facts and circumstances may prove or tend to prove that the defendant committed other crimes." *State v. Knecht*, 181 Neb. 149, 157, 147 N.W.2d 167, 173 (1966). The contention is without merit.

The defendant requested that the jury be charged on the "lesser-included offense" of resisting arrest. This contention is without merit.

Neb. Rev. Stat. § 28-904 (Reissue 1979) defines the crime of resisting arrest. It provides, insofar as is relevent here: "(1) A person commits the offense of resisting arrest if, while intentionally preventing or attempting to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the actor or another, he:

"(a) Uses or threatens to use physical force or violence against the peace officer or another; or

"(b) Uses any other means which creates a substantial risk of causing physical injury to the peace officer or another; or

"(c) Employs means requiring substantial force to overcome resistance to effecting the arrest."

The crime of escape may, but does not necessarily, include the use of force. Neb. Rev. Stat. § 28-913 (Reissue 1979).

In *State v. Colgrove*, 197 Neb. 375, 376, 248 N.W.2d 780, 781 (1977), as well as in several other recent cases, we have defined lesser-included offense as: "A lesser included offense is one which is necessarily established by proof of the greater offense. [Citation omitted.] To be a lesser included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser."

It should be observed that some of the cases we have cited in connection with assignments (1) and (2) have noted that arrest is not only an act that occurs at a particular time but also a process or a state that may continue for a period, e.g., until incarceration or release

on bail.

This appears to be one of those cases where, under the particular state of the evidence, the prosecutor might have had a choice of charging either escape or resisting arrest, but could not, under the particular facts, have charged and convicted of both. The State took the risk of an improper choice and gets the benefit of choosing correctly. The court did not err in refusing to include an instruction on lesser-included offense.

The defendant's last assignment urges that the habitual criminal statute, Neb. Rev. Stat. § 29-2221 (Reissue 1979), is unconstitutional as applied and violates the due process clause of the U.S. Constitution because the prosecutor's discretion as to whether or not to file the habitual criminal count in a particular case is not subject to statutory standards or judicial review. The full scope of the defendant's argument is set forth in Note, *A Closer Look at Habitual Criminal Statutes,* 16 Am. Crim. L. Rev. 275 (1979). Neither the defendant nor the author of the article cites any case authority to support the proposition. We have rejected similar arguments. *State v. Martin,* 190 Neb. 212, 206 N.W.2d 856 (1973). The Supreme Court of the United States, in *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978), has said: "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" There is no evidence in the record to indicate that the discretion in this case was based upon any such unjustifiable

standard. The defendant's last assignment is not meritorious.

AFFIRMED.

McCOWN, J., concurs in result.