STATE OF NEBRASKA, APPELLEE, V.
CHRISTOPHER M. ELLINGSON, APPELLANT.
703 N.W.2d 273

Filed September 13, 2005.   No. A-04-837.

932

James Martin Davis, of Davis & Finley Law Offices, for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

IRWIN, SIEVERS, and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Christopher M. Ellingson appeals the order of the district court for Sarpy County which affirmed his county court convictions for misdemeanor operation of a motor vehicle to avoid arrest and for obstruction of a peace officer. Because we conclude that the evidence was sufficient to support Ellingson's conviction on each count, we affirm.

## BACKGROUND

On September 13, 2002, the State filed its operative complaint charging Ellingson with misdemeanor operation of a motor vehicle to avoid arrest, a Class I misdemeanor in violation of Neb. Rev. Stat. § 28-905(1) (Cum. Supp. 2004), and with obstructing a peace officer, a Class I misdemeanor in violation of Neb. Rev. Stat. § 28-906(1) (Reissue 1995). The complaint contained two other charges, but they were dismissed at trial and are not the subject of this appeal.

Prior to trial, Ellingson filed motions to suppress his statements and all evidence seized during the stop, questioning, and arrest. At trial, Ellingson withdrew his motions to suppress.

On December 11 and 12, 2003, the county court conducted a bench trial on the charges. Considering our standard of review, we summarize the evidence in the light most favorable to the State. See *State v. Muro*, 269 Neb. 703, 695 N.W.2d 425 (2005).

On September 7, 2002, at approximately 3 a.m., Officer Kurt Stroeher of the Bellevue Police Department was on duty and in uniform, operating stationary radar. Stroeher initially testified that at rollcall at the beginning of Stroeher's shift, Stroeher was advised that Ellingson had been involved in a domestic assault against his wife earlier in the evening and that he might be driving a white BMW. Stroeher was instructed that if he encountered Ellingson, Stroeher was to stop Ellingson, take him into custody, and make contact with an "Officer Lowery." Stroeher later testified that he recalled hearing the vehicle's description at rollcall but that if he heard Ellingson's name prior to stopping him, Stroeher did not remember it. During Stroeher's shift on September 7, he saw a white BMW and followed the vehicle until he received confirmation that it was the vehicle mentioned at rollcall. Stroeher activated his patrol car's red lights and siren, and Ellingson, who was driving the BMW, immediately pulled over and stopped. Stroeher's patrol car was situated behind Ellingson's vehicle, with a video camera focused on Ellingson's vehicle. The trial court received the resulting videotape into evidence.

Stroeher approached the driver's side of the BMW and asked Ellingson to produce his driver's license, registration, and proof of insurance. Ellingson responded, "What did I do?" Stroeher requested the documents two more times. Ellingson said, "I was doing the speed limit." Ellingson produced at least some of the documents. Stroeher informed Ellingson that he had been stopped because of an incident the previous afternoon involving Ellingson's wife. Ellingson denied knowing anything about an incident involving his wife. Stroeher told Ellingson that he would do some more checking to determine whether Stroeher needed to discuss the matter further with Ellingson or whether the case had been resolved. Stroeher informed Ellingson that another police officer had talked to Ellingson's wife the preceding afternoon about a "problem" that Ellingson and his wife had had. Ellingson again denied knowledge of the incident. As Stroeher was about to walk away from Ellingson's vehicle, Ellingson said that he had been at work from 8 a.m. until 4 p.m. on the preceding day. Stroeher asked Ellingson whether an argument had occurred the preceding afternoon, and Ellingson replied that nothing had happened. Ellingson remained in his vehicle while Stroeher walked

toward his patrol car to consult with Sgt. Timothy Hrbek, the backup police officer and shift supervisor who had arrived at the scene after the stop and who was also in uniform. The emergency lights on Stroeher's patrol car were still engaged.

Stroeher called the police dispatcher and received confirmation that police had been at Ellingson's residence at 3:05 p.m. the preceding afternoon in response to a domestic violence complaint. Hrbek advised Stroeher that Lowery wanted Ellingson "booked" for third degree assault and false imprisonment. Stroeher deduced aloud that it was because of these possible charges that Ellingson "was intent on telling me" that he had been at work until 4 p.m. Hrbek then recalled that Lowery had gone to Ellingson's workplace the preceding day but that Ellingson was not present and had departed from work 20 or 30 minutes early. Stroeher expressed uncertainty as to whether certain events occurred the preceding afternoon or the day before that, but he considered Ellingson's claims of being at work to be inconsistent with the time of the domestic violence complaint. Stroeher and Hrbek decided to arrest Ellingson. At trial, Stroeher testified that he had intended to arrest Ellingson "on the domestic violence charge."

In order to effectuate the arrest, Stroeher approached Ellingson's vehicle from the rear on the driver's side. Ellingson sat in the vehicle with the driver's-side door closed and the window open, using a cellular telephone. Stroeher told Ellingson to exit the vehicle. Ellingson responded, "Why?" Stroeher told Ellingson two more times to exit the vehicle, but Ellingson refused. Hrbek approached Ellingson's vehicle from the rear on the passenger's side. Hrbek opened the passenger door of Ellingson's vehicle. Stroeher ordered Ellingson to "[h]ang up the phone [and g]et out of the car." Ellingson started the vehicle, revved the engine, and drove away from the scene.

After Ellingson started the vehicle, Stroeher reached inside the vehicle in an attempt to turn off the ignition. He withdrew his hand when Ellingson began to drive away. Hrbek believed Stroeher was being dragged by Ellingson's vehicle. Hrbek drew his gun and fired one shot at Ellingson's vehicle, shattering the rear window. Stroeher and Hrbek entered their patrol cars and pursued Ellingson through a residential area with their cars' lights and sirens engaged, traveling at approximately 50 miles per hour.

After about a 90-second chase during which Ellingson ran a stop sign, Ellingson stopped in a cul-de-sac.

Stroeher, who was pointing his weapon at Ellingson, repeatedly ordered Ellingson to exit his vehicle and show his hands. Ellingson exited the vehicle. Initially, Ellingson had his left arm in the air with his palm facing forward and his right hand appeared to be behind his back, dropping an object into the car. Ellingson briefly placed both arms in the air with his palms facing forward, but he immediately moved his arms to his sides with his palms facing the rear. Stroeher and Hrbek repeatedly ordered Ellingson to get on the ground. Ellingson asked, "Why?" He folded his arms and remained standing. Ellingson then extended his arms slightly to the sides with his palms forward and continued to ask "Why?" in response to repeated commands to get on the ground. Hrbek shot Ellingson in the chest with a stun gun, and Ellingson fell to the ground. Stroeher handcuffed Ellingson, informed Ellingson that he was under arrest, and began reciting —but failed to totally pronounce—the *Miranda* rights.

Stroeher informed Ellingson that Stroeher had initially stopped Ellingson to arrest him for third degree assault, that Stroeher's hand was inside Ellingson's vehicle when Ellingson drove away, and that Stroeher could have been dragged by Ellingson's vehicle. Ellingson said, "I'm sorry. You just scared me because every time [indiscernible] hop out or whatever, you arrest me." Stroeher told Ellingson that Stroeher had indeed intended to arrest him. Ellingson conversed with Stroeher until paramedics arrived. Ellingson had suffered a superficial gunshot wound to his shoulder, where the bullet from Hrbek's gun had entered and exited.

At trial, Ellingson testified that when Hrbek opened the passenger door of Ellingson's vehicle, Ellingson was not aware that any officer other than Stroeher was in the area. Ellingson claimed that he drove away from Stroeher and Hrbek because he was "spooked" when an unknown person opened the passenger door. Ellingson testified that he did not know he was under arrest and that he believed he was free to leave. Ellingson admitted that he had left work early the preceding afternoon.

The trial court made specific findings regarding the lawfulness of the stop and the initial attempt to arrest Ellingson. The

court then found Ellingson guilty of misdemeanor operation of a motor vehicle to avoid arrest and guilty of obstructing a peace officer. The trial court fined Ellingson $100 for each conviction and sentenced him to 365 days in county jail for each conviction, with the sentences to be served concurrently. The trial court also revoked Ellingson's driver's license for 1 year for his conviction for misdemeanor operation of a motor vehicle to avoid arrest. Ellingson appealed to the district court, asserting that the evidence was insufficient to convict him of each charge. Rejecting Ellingson's assertions, the district court affirmed. Ellingson now appeals to this court.

## ASSIGNMENTS OF ERROR

Ellingson assigns (1) that the district court erred in affirming the conviction for misdemeanor operation of a motor vehicle to avoid arrest, (2) that the district court erred in affirming the conviction for obstruction of a peace officer, and (3) that the trial court's findings were clearly erroneous and contrary to law.

These assigned errors are much broader than the errors Ellingson assigned on appeal to the district court. In reviewing decisions of the district court which affirmed, reversed, or modified decisions of the county court, a higher appellate court will consider only those errors specifically assigned in the appeal to the district court and again assigned as error in the appeal to the higher appellate court. *State v. Kubin*, 263 Neb. 58, 638 N.W.2d 236 (2002). We also note that when an assignment of error is generalized and vague, as in this case, an appellate court will review the appeal if the specific contention made by the criminal defendant is set forth in his or her brief and the State, through its brief, has argued in response to that contention. See *State v. Egger*, 8 Neb. App. 740, 601 N.W.2d 785 (1999). Therefore, in this appeal, we consider only whether the evidence was sufficient to support Ellingson's convictions for misdemeanor operation of a motor vehicle to avoid arrest and for obstructing a peace officer.

## STANDARD OF REVIEW

In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for

the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Jonusas*, 269 Neb. 644, 694 N.W.2d 651 (2005).

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Muro*, 269 Neb. 703, 695 N.W.2d 425 (2005).

## ANALYSIS
*Misdemeanor Operation of Motor Vehicle to Avoid Arrest.*

Ellingson argues that the evidence was insufficient to support his conviction for misdemeanor operation of a motor vehicle to avoid arrest. Section 28-905(1), which sets forth the elements of the offense, provides:

> Any person who operates any motor vehicle to flee in such vehicle in an effort to avoid arrest or citation for the violation of any law of the State of Nebraska constituting a misdemeanor, infraction, traffic infraction, or any city or village ordinance, except nonmoving traffic violations, commits the offense of misdemeanor operation of a motor vehicle to avoid arrest.

An attempt to arrest is an essential element of the offense of fleeing in a motor vehicle to avoid arrest, but proof that the defendant actually committed the law violation for which the arrest was attempted is not required. *State v. Taylor*, 12 Neb. App. 58, 666 N.W.2d 753 (2003).

On the day of Ellingson's arrest, Stroeher and Hrbek had knowledge that another police officer wanted Ellingson charged with third degree assault and false imprisonment, related to a domestic violence incident. Third degree assault is a misdemeanor offense. Neb. Rev. Stat. § 28-310 (Reissue 1995). Stroeher testified that he had intended to arrest Ellingson on the "domestic violence charge." An arrest is taking custody of another person for the purpose of holding or detaining him or her to answer a

criminal charge. It is defined as the taking, seizing, or detaining of the person of another. *State v. White*, 209 Neb. 218, 306 N.W.2d 906 (1981). To effect an arrest, there must be actual or constructive seizure or detention of the person arrested, or his or her voluntary submission to custody, and the restraint must be under real or pretended legal authority. *Id*. Stroeher did not verbally announce an arrest, but by ordering Ellingson to exit the vehicle, Stroeher had begun to take actions to effectuate physical control over Ellingson, which actions constituted an attempt to arrest. Viewed in the light most favorable to the State, the evidence shows that Stroeher and Hrbek attempted to arrest Ellingson for a misdemeanor offense.

We next determine whether Ellingson operated his vehicle in an effort to avoid arrest. Construed in the light most favorable to the State, the evidence shows that Ellingson fled when a police officer, who had questioned Ellingson about an incident, argument, or problem with Ellingson's wife, ordered him to exit his vehicle. At all times during the encounter, the officer's patrol car's emergency lights were engaged. After the ensuing chase, Ellingson apologized to Stroeher for driving away while Stroeher's hand was inside the vehicle and Ellingson admitted that he had feared being arrested. We conclude that Ellingson drove away in his vehicle in an attempt to avoid arrest and that there was sufficient evidence to support his conviction for misdemeanor operation of a motor vehicle to avoid arrest.

Ellingson argues that any arrest prior to the chase would have been unlawful and that he therefore did not flee to avoid an arrest. Even assuming, without deciding, that § 28-905(1) requires a lawful arrest, Ellingson's argument fails. Neb. Rev. Stat. § 29-404.02(3) (Reissue 1995), the version of the statute in effect at the time of Ellingson's arrest, authorizes warrantless arrests when the arresting officer has reasonable cause to believe that the suspect has intentionally, knowingly, or recklessly caused bodily injury to his or her spouse or has threatened his or her spouse in a menacing manner. The validity of a warrantless arrest and the permissibility of a search incident thereto are premised upon the existence of probable cause, not on a police officer's knowledge that probable cause exists. *State v. Ranson*, 245 Neb. 71, 511 N.W.2d 97 (1994). The test of probable cause for a

warrantless arrest is whether, at the moment of the arrest, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense. See *State v. Jones*, 208 Neb. 641, 305 N.W.2d 355 (1981). Probable cause for a warrantless arrest is to be evaluated by the collective information of the police engaged in a common investigation. *State v. Nissen*, 252 Neb. 51, 560 N.W.2d 157 (1997).

At the police rollcall, Stroeher had received information that Ellingson had been involved in a domestic assault with his wife and that he might be driving a white BMW. Stroeher was instructed to take Ellingson into custody if Stroeher encountered Ellingson. Stroeher and Hrbek knew through information received from the police dispatcher and through their own recollections that police had responded to a domestic violence complaint at Ellingson's residence the previous afternoon and that Lowery intended to charge Ellingson with third degree assault and false imprisonment. A person commits third degree assault if he or she intentionally, knowingly, or recklessly causes bodily harm to another or threatens another in a menacing manner. § 28-310(1). Stroeher and Hrbek also had information that Lowery had gone to Ellingson's workplace in connection with Lowery's investigation but that Ellingson had left work early, giving the appearance that Ellingson was attempting to avoid Lowery. Ellingson told Stroeher that he had been at work on the day of the alleged assault, but the fact that the domestic violence complaint was made at a time when Ellingson claimed to have been at work raised questions as to Ellingson's truthfulness. Considering the reasonably trustworthy information available to Stroeher and Hrbek, we conclude that the officers were authorized to make a warrantless arrest of Ellingson on the domestic violence-related offenses and that had the officers effectuated such arrest before Ellingson fled, it would have been lawful. Therefore, viewing the evidence in the light most favorable to the State, the trial court did not commit clear error in determining that the officers had probable cause to execute a warrantless arrest. See, *State v. Muro*, 269 Neb. 703, 695 N.W.2d 425 (2005); *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000).

*Obstructing Peace Officer.*

Ellingson contends that the evidence was insufficient to convict him of obstructing a peace officer. Section 28-906(1) provides:

A person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders . . . the enforcement of the penal law or the preservation of the peace by a peace officer or judge acting under color of his or her official authority . . . .

There must be some sort of affirmative physical act, or threat thereof, for a violation of the statute to occur. *State v. Owen*, 7 Neb. App. 153, 580 N.W.2d 566 (1998). See *State v. Yeutter*, 252 Neb. 857, 566 N.W.2d 387 (1997). Running away from officers has been held to be a violation of § 28-906(1) when the physical obstacle interposed by the act obstructs, impairs, or hinders the officers' efforts to preserve the peace. See *In re Interest of Richter*, 226 Neb. 874, 415 N.W.2d 476 (1987).

In the instant case, Stroeher questioned Ellingson about an incident, problem, or argument involving Ellingson's wife. When Stroeher told Ellingson to exit his vehicle and Hrbek, another uniformed officer, opened the passenger door of Ellingson's vehicle, Ellingson drove away from the officers. After a chase, Ellingson disobeyed the officers' orders to get on the ground. He later explained to Stroeher that he had feared being arrested. Viewing the evidence in the light most favorable to the State, we conclude that in fleeing from the officers, Ellingson intentionally hindered their efforts to preserve the peace and enforce penal law, and that the trial court did not err in finding the evidence sufficient to support a conviction for obstruction of a peace officer.

Ellingson attempts to distinguish *In re Interest of Richter, supra*, from the present case. He argues that *In re Interest of Richter* involved a young man breaching the peace by yelling and cursing, while the instant case involved no such disturbance. "Preservation of the peace," as used in § 28-906(1), means maintaining the tranquility enjoyed by members of a community where good order reigns. *In re Interest of Richter, supra.* Stroeher initially stopped Ellingson in connection with domestic violence offenses. Ellingson subsequently sped away from the

scene of the stop and led officers, with their patrol cars' emergency lights and sirens engaged, on a chase through a residential neighborhood in the middle of the night at a speed of approximately 50 miles per hour. Even if the holding in *In re Interest of Richter, supra*, applied exclusively to cases involving an obstruction, impairment, or hindrance of the preservation of the peace, the instant case would fall within that classification.

Ellingson further argues that his conviction for obstructing a peace officer cannot stand because the police officers were not legitimately enforcing penal law when Ellingson left the scene of the initial stop. He asserts that Stroeher did not initially stop Ellingson to arrest him and that a limited investigatory stop was not justified. By withdrawing his motion to suppress, Ellingson waived any arguments that the initial stop was illegal, insofar as those arguments relate to the suppression of evidence. We examine the investigatory stop only in the context of the sufficiency of the evidence, and thus, we construe the evidence in the light most favorable to the State in determining whether the trial court committed clear error. See, *State v. Muro*, 269 Neb. 703, 695 N.W.2d 425 (2005); *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000).

Limited investigatory stops are permissible only upon a reasonable suspicion, supported by specific and articulable facts, that the person is, was, or is about to be engaged in criminal activity. *State v. Puls, ante* p. 230, 690 N.W.2d 423 (2004). See *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause. *State v. Puls, supra*. Whether a police officer has a reasonable suspicion based on sufficient articulable facts requires taking into account the totality of the circumstances. *Id*. An officer making a traffic stop need not be aware of the factual foun dation for the basis of the stop, so long as the factual foundation is sufficient to support a reasonable suspicion. See *State v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344 (1997) (stop supported by reasonable suspicion where National Crime Information Center check by officer before any stop revealed that vehicle was associated with missing

white adult female and that there was caution message concerning vehicle and where officer observed no female in vehicle). See, also, *United States v. Hensley*, 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985) (officer may rely on flyer or bulletin in making investigatory stop if bulletin is based on articulable facts supporting reasonable suspicion); *State v. Benson*, 198 Neb. 14, 251 N.W.2d 659 (1977) (where no evidence was provided at suppression hearing regarding information or facts relied on as factual foundation for broadcast message, radio message alone did not establish existence of reasonable suspicion); *State v. Micek*, 193 Neb. 379, 227 N.W.2d 409 (1975) (upholding traffic stop made solely on basis of radio bulletin that was based on facts creating reasonable suspicion or probable cause); *State v. Mays*, 6 Neb. App. 855, 578 N.W.2d 453 (1998) (reasonable suspicion not present where State offered no factual foundation for fellow officer's warning to arresting officer that driver of red pickup was drug dealer and had drugs on his person), *overruled on other grounds, State v. Anderson, supra.*

In the instant case, Ellingson's vehicle was identified at a police rollcall and Stroeher was instructed to stop Ellingson because he had been involved in a domestic assault against his wife. Lowery intended to charge Ellingson with third degree assault and false imprisonment. Lowery had attempted to speak with Ellingson at his workplace, but Ellingson had departed early. Therefore, assuming without deciding that § 28-906(1) allows a defendant to raise the legitimacy of an investigatory stop in defending a charge of obstructing a peace officer, we find that the stop in the instant case was supported by reasonable suspicion based on specific and articulable facts.

## CONCLUSION

We conclude that the district court did not err in affirming Ellingson's convictions for misdemeanor operation of a motor vehicle to avoid arrest and for obstruction of a peace officer, and we affirm.

AFFIRMED.