State of Nebraska, appellee, v.
Jacob D. Armagost, appellant.
___ N.W.2d ___

Filed November 4, 2014.    No. A-14-058.

1. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

2. **Arrests: Motor Vehicles: Proof.** An attempt to arrest or cite the defendant is an essential element of the offense of fleeing in a motor vehicle to avoid arrest, but proof that the defendant actually committed the law violation for which the arrest or citation was attempted is not required.

3. **Arrests: Motor Vehicles: Proof: Statutes.** Neb. Rev. Stat. § 28-905 (Reissue 2008) has been amended to now prohibit operating a motor vehicle to avoid arrest or citation, whereas before, it prohibited operating a motor vehicle to avoid arrest only. Thus, based on the amendment of the statute, the State may prove this element of the crime by evidence of an attempt to arrest or cite the defendant.

4. **Verdicts: Appeal and Error.** Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt.

5. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

6. **Jury Instructions.** In giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute.

7. **Criminal Law: Jury Instructions.** Jury instructions that set forth only the statutory elements of a crime are insufficient when they do not set forth all the essential elements of the crime.

8. **Jury Instructions: Appeal and Error.** A jury instruction that omits an element of the offense from the jury's determination is subject to harmless error review.

9. **Verdicts: Appeal and Error.** Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict surely would have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error.

10. **Criminal Law: Judgments: Verdicts.** Motions for judgment notwithstanding the verdict are limited to civil proceedings and are unavailable under Nebraska criminal procedure.

Appeal from the District Court for Merrick County: Michael J. Owens, Judge. Affirmed.

Mitchell C. Stehlik, of Lauritsen, Brownell, Brostrom & Stehlik, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and Laura A. Nigro for appellee.

Inbody, Riedmann, and Bishop, Judges.

Riedmann, Judge.

## I. INTRODUCTION

Jacob D. Armagost appeals his jury conviction for operating a motor vehicle in a willful reckless manner to avoid arrest. Armagost assigns that the district court erred in failing to direct a verdict, instructing the jury, finding sufficient evidence to support his conviction, and overruling his motion for new trial and motion for judgment notwithstanding the verdict. Finding no merit to Armagost's assigned errors, we affirm.

## II. BACKGROUND

Armagost was charged in the district court for Merrick County with operating a motor vehicle in a willful reckless manner to avoid arrest. A jury trial was held, during which the following evidence was adduced:

On June 6, 2013, Central City Police Lt. Mark Hogue was stopped at the intersection of 10th Avenue and U.S. Highway 30 in Central City, Nebraska, when he observed a vehicle stopped at an intersection approximately 30 feet to his left. Lieutenant Hogue observed the driver of the vehicle for approximately 15 seconds and was "[o]ne hundred percent" certain that it was Armagost. Lieutenant Hogue testified that he had known Armagost for approximately 13 years and was very familiar with him. He estimated having seen him approximately 50 times over the years, including "[a]t least a half-dozen times, if not more," in the same particular vehicle. Lieutenant Hogue

knew that the vehicle belonged to a person whom he knew to be associated with Armagost.

Lieutenant Hogue intended to initiate a traffic stop immediately, because he knew Armagost's driver's license was suspended at that time. He testified that individuals who are found to be driving under suspension are generally arrested and transported to the sheriff's office, where they are booked and released. When Lieutenant Hogue observed the vehicle turn west onto Highway 30, he pulled behind it and activated his cruiser's overhead emergency lights, which triggered its dashboard camera to begin recording. The pursuit that followed was captured on video and played for the jury at trial.

Armagost did not pull over in response to the attempted traffic stop; rather, he executed a quick left turn onto 11th Avenue and accelerated rapidly down a residential street. Lieutenant Hogue immediately activated his cruiser's siren and began pursuing the vehicle. There were numerous vehicles parked along the street, and recent occupants of one vehicle had to move quickly toward the curb to avoid being hit. Armagost continued down 11th Avenue for approximately four blocks, traveling at speeds up to 55 miles per hour in the 25-mile-per-hour residential zone.

Once he reached Horde Lake Road, Armagost headed eastbound out of town at speeds over 100 miles per hour. He proceeded around a "fairly decent sharp curve" in the road at approximately 80 miles per hour while two vehicles were approaching from the opposite direction. Both of those vehicles moved to the shoulder to get out of the way, and a third vehicle that was driving in front of Armagost went into the ditch. After clearing the curve, Armagost accelerated again as he approached a bridge. Lieutenant Hogue observed a parked vehicle and a woman fishing from the bridge, so he sounded his cruiser's air horn to alert the woman to move to safety.

After crossing the bridge, the pursuit continued onto a gravel road. Lieutenant Hogue was not able to keep up due to the dust trail from Armagost's vehicle ahead of him. Lieutenant Hogue described the road as "loose gravel" and testified that he was having a hard time keeping his vehicle on the road at such speeds. He decided to discontinue the pursuit

primarily for safety reasons, but also because he had already identified Armagost as the driver.

On cross-examination, Lieutenant Hogue testified that Armagost was not apprehended the day of the chase. He acknowledged that he was not able to make or attempt an actual or constructive seizure of Armagost because he discontinued the pursuit. However, he later clarified that he "attempted [to seize or detain Armagost] up to the point [he] disengaged the pursuit."

At the conclusion of Lieutenant Hogue's testimony, the State rested and Armagost moved for a directed verdict. The motion was overruled. Armagost rested without presenting any evidence and then moved for a directed verdict once again at the close of all of the evidence. The motion was again overruled.

At the jury instruction conference, Armagost offered a proposed jury instruction setting forth a definition of "arrest." Defense counsel argued that it was important for the jury to know the definition of arrest so that it could determine whether the essential element of an attempt to arrest Armagost was satisfied. The district court declined to give the proposed instruction, indicating that such instruction could confuse the jury, since an actual arrest was not necessary for a conviction. Armagost also objected to instruction No. 3, which set forth the elements of the offense, on the basis that it omitted the element of an attempt to arrest Armagost. The district court overruled the objection and gave the elements instruction as written, without including the element of an attempted arrest.

The jury found Armagost guilty of operating a motor vehicle in a willful reckless manner to avoid arrest. The district court accepted the jury's verdict.

Armagost timely filed a motion for new trial asserting that the district court erred in (1) failing to grant his motions for directed verdict, (2) declining to give his proposed jury instruction containing the definition of arrest, and (3) overruling his objection to instruction No. 3. Armagost also filed a motion for judgment notwithstanding the verdict on the basis that the evidence was insufficient to sustain the jury's verdict. The

district court overruled both motions. Following his sentencing, Armagost timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Armagost assigns six errors on appeal. He alleges the district court erred in (1) failing to grant his motions for directed verdict at the close of the State's evidence and at the close of all evidence presented in the case; (2) failing to offer his proposed jury instruction containing the definition of arrest; (3) overruling his objection to instruction No. 3, which did not include the essential element of an attempt to arrest; (4) accepting the jury's guilty verdict when the evidence was insufficient to prove his guilt beyond a reasonable doubt; (5) failing to grant his motion for new trial; and (6) failing to grant his motion for judgment notwithstanding the verdict. We have consolidated his assignments of error to four, as set forth below.

## IV. ANALYSIS

### 1. Sufficiency of Evidence

In his first assignment of error, Armagost asserts that the district court erred in overruling his motions for directed verdict, because the evidence was insufficient to convict him. Armagost's fourth assignment of error similarly challenges the sufficiency of the State's evidence to sustain his conviction. Because both assignments of error relate to the sufficiency of the evidence, we will address them together.

[1] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011).

Armagost makes the same three arguments in support of both assignments of error. He argues that (a) there was no evidence of an attempt to arrest Armagost, (b) there was insufficient evidence to identify Armagost as the driver of the vehicle, and (c) there was insufficient evidence of willful reckless operation of the vehicle. We will address each argument in turn.

### (a) Attempted Arrest

[2] A person commits the offense of operating a motor vehicle to avoid arrest if he or she "operates any motor vehicle to flee in such vehicle in an effort to avoid arrest or citation." Neb. Rev. Stat. § 28-905(1) (Reissue 2008). An attempt to arrest or cite the defendant is an essential element of the offense of fleeing in a motor vehicle to avoid arrest, but proof that the defendant actually committed the law violation for which the arrest or citation was attempted is not required. See, *id*.; *State v. Claussen*, 276 Neb. 630, 756 N.W.2d 163 (2008).

[3] We note that § 28-905 has been amended since the Nebraska Supreme Court held in *State v. Claussen, supra*, that an attempt to arrest the defendant is an essential element of the offense. The statute now prohibits operating a motor vehicle to avoid arrest *or citation*, whereas before, it prohibited operating a motor vehicle to avoid arrest only. Compare § 28-905 (Reissue 2008) (effective July 18, 2008), with § 28-905 (Cum. Supp. 2006). Thus, based on the amendment of the statute, we conclude that the State may prove this element by evidence of an attempt to arrest *or cite* the defendant.

Nonetheless, we find the evidence presented at trial clearly established that Lieutenant Hogue attempted to arrest Armagost. Lieutenant Hogue testified that he attempted to initiate a traffic stop because he was aware that Armagost's driver's license was suspended. He further testified that it is normal protocol to arrest individuals that are found to be driving on a suspended license. Lieutenant Hogue activated his cruiser's overhead emergency lights and siren to initiate a traffic stop and then engaged in a high-speed chase in an effort to apprehend Armagost. The fact that Lieutenant Hogue

was not able to effect an arrest of Armagost does not negate the fact that he attempted to do so. The dashboard camera video admitted into evidence depicts the pursuit as described by Lieutenant Hogue. Viewing this evidence in the light most favorable to the State, we conclude that a rational trier of fact could reasonably conclude that Lieutenant Hogue attempted to arrest Armagost.

Armagost argues that the evidence was insufficient to prove that there was an attempted arrest, based on Lieutenant Hogue's testimony that he was never able to attempt an arrest because he disengaged the pursuit for safety reasons. Although Lieutenant Hogue testified that he was not able to attempt an arrest, he later clarified that he "attempted up to the point [he] disengaged the pursuit." The evidence clearly shows that he attempted to initiate a traffic stop, which is a necessary step in attempting to make an arrest. We find that Lieutenant Hogue's attempt to stop the vehicle with his cruiser's overhead emergency lights and siren activated was sufficient to satisfy this element of the offense.

### (b) Identification of Armagost

Armagost argues that the evidence was insufficent to prove that he was the driver of the vehicle, because Lieutenant Hogue was the only person that identified him. Essentially, Armagost argues that Lieutenant Hogue's testimony was not credible.

[4] It is well established that in reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, as such matters are for the finder of fact to resolve. See *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011). Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011).

It is apparent from the jury's verdict that it found the testimony of Lieutenant Hogue to be credible, and its determination on this issue is supported by the evidence. Lieutenant Hogue testified that he was very familiar with Armagost and

had known him for many years. He had seen Armagost approximately 50 times over the years, as well as "[a]t least a half-dozen times" in the same vehicle he pursued on June 6, 2013. Lieutenant Hogue knew the vehicle belonged to a person whom he knew to be associated with Armagost. Lieutenant Hogue observed the driver of the vehicle for approximately 15 seconds and testified that he was "[o]ne hundred percent" certain that it was Armagost. Viewing this evidence in the light most favorable to the State, we find that a reasonable jury could conclude that Armagost was driving the vehicle that fled from Lieutenant Hogue on June 6.

### (c) Willful Reckless Operation
### of Vehicle

Operating a motor vehicle to avoid arrest is a Class IV felony if it includes the willful reckless operation of the motor vehicle. § 28-905(3)(a)(iii) (Reissue 2008). Willful reckless driving is defined as operating a motor vehicle in such a manner as to indicate a willful disregard for the safety of persons or property. Neb. Rev. Stat. § 60-6,214 (Reissue 2010).

There is sufficient evidence in the record to support the jury's finding that Armagost was operating the motor vehicle in a willful reckless manner. Lieutenant Hogue testified that Armagost traveled up to 55 miles per hour in a 25-mile-per-hour residential zone. Numerous vehicles were parked along the residential street, and recent occupants of one vehicle hurried toward the curb to get out of harm's way. During the pursuit, Lieutenant Hogue was traveling at approximately 80 miles per hour while traversing a sharp curve in the road and reached over 100 miles per hour on Horde Lake Road. Despite traveling at such high speeds, Lieutenant Hogue was not able to catch up to Armagost.

Armagost's actions indicated a willful disregard for the safety of persons and property that he encountered during the pursuit, including parked cars and individuals on the residential street, three vehicles that moved onto the shoulder or into the ditch on Horde Lake Road, and the woman who was standing on the bridge fishing. Viewing this evidence in the light most favorable to the State, any rational trier of

fact could have found Armagost guilty of operating a motor vehicle in a willful reckless manner to avoid arrest.

Because the evidence was sufficient to support Armagost's conviction, his first and fourth assignments of error have no merit.

## 2. Jury Instructions

Armagost's second and third assignments of error relate to the jury instructions given by the district court. Armagost asserts that the district court erred by (a) failing to tender his proposed jury instruction regarding the definition of arrest and (b) overruling his objection to instruction No. 3, which failed to include an attempt to arrest as one of the essential elements of the offense.

### (a) Proposed Instruction

Armagost requested the district court to instruct the jury on the definition of arrest so that it could determine whether the essential element of an attempt to arrest Armagost was satisfied. Armagost's proposed instruction states: "An arrest is taking custody of another person for the purpose of holding or detaining him or her to answer to a criminal charge, and to effect an arrest, there must be an actual or constructive seizure or detention of the person arrested."

[5] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Banks*, 278 Neb. 342, 771 N.W.2d 75 (2009).

Although Armagost's proposed instruction is a correct statement of the law, we do not find it to be applicable here. Armagost's proposed instruction comes from *State v. Heath*, 21 Neb. App. 141, 838 N.W.2d 4 (2013), in which we set forth the definition of arrest while analyzing the sufficiency of the evidence to support a conviction for resisting arrest. Significantly, our opinion in *Heath* did not address whether the jury must be instructed on the definition of arrest.

We note, however, that an instruction containing the definition of arrest was given in *State v. White*, 209 Neb. 218, 306 N.W.2d 906 (1981), which involved a prosecution for escape from official detention after the defendant fled from an officer as he was being placed under arrest. Unlike the present offense, a conviction for escape requires evidence that the defendant unlawfully removed himself from official detention or arrest. In other words, the State had to prove that the defendant was under arrest at the time of the alleged escape in order to obtain a conviction. Thus, an instruction on the definition of arrest and how an arrest is effected was warranted in that case.

Here, Armagost was charged with operating a motor vehicle in a willful reckless manner to avoid arrest. In order to be convicted of this charge, it was not necessary for the State to prove that an arrest had been effected. To the contrary, a charge of operating a motor vehicle to avoid arrest necessarily implies that the defendant attempted to avoid arrest. In the present case, Armagost successfully avoided an effected arrest. Therefore, a jury instruction defining arrest and how one is effected was not required.

### (b) Objection to Instruction No. 3

Armagost objected to instruction No. 3 on the basis that it omitted the essential element of an attempt to arrest him. Instruction No. 3, as given to the jury, states, in relevant part:

> The material elements which the State must prove beyond a reasonable doubt in order to convict [Armagost] of the offense of operating a motor vehicle in a willful reckless manner to avoid arrest are:
>
> 1. That . . . Armagost . . . operated a motor vehicle;
>
> 2. That [Armagost] fled in such vehicle in an effort to avoid arrest or citation;
>
> 3. That [Armagost] did so in a willful reckless manner; and
>
> 4. That [Armagost] did so on or about June 6, 2013, in Merrick County, Nebraska.
>
> A person drives in a willful reckless manner if he or she drives any motor vehicle in such a manner as

to indicate a willful disregard for the safety of persons or property.

[6] The Nebraska Supreme Court has held that "in giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute." *State v. Sanders*, 269 Neb. 895, 913, 697 N.W.2d 657, 672 (2005). We agree with the State's observation that instruction No. 3 mirrors the language of the statute, which states: "Any person who operates any motor vehicle to flee in such vehicle in an effort to avoid arrest or citation commits the offense of operation of a motor vehicle to avoid arrest." § 28-905(1).

[7] However, "[j]ury instructions that set forth only the statutory elements of a crime are insufficient when they do not set forth all the essential elements of the crime." *State v. Williams*, 247 Neb. 931, 939, 531 N.W.2d 222, 229 (1995), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). As previously discussed, an attempt to arrest or cite the defendant is an essential element of the offense. See *State v. Claussen*, 276 Neb. 630, 756 N.W.2d 163 (2008). Thus, we conclude that because an attempt to arrest or cite the defendant is an essential element of this offense, the district court erred in failing to include it in instruction No. 3.

[8,9] Our analysis, however, does not end there. A jury instruction that omits an element of the offense does not require automatic reversal, but, rather, it is subject to harmless error review. See *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014). Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict surely would have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *Id*. Where a court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error, it should not find the error harmless. *Id*.

We conclude beyond a reasonable doubt that the jury's guilty verdict in this case was unattributable to the omission of this element in instruction No. 3, because the requirement

of an attempt to arrest Armagost was implicit in the instruction given. In other words, in determining that Armagost fled in a motor vehicle in an effort to avoid arrest or citation, the jury necessarily considered and determined that there was an attempt to arrest or stop Armagost, because otherwise there would be nothing from which to flee or to avoid. We find that the jury's verdict would have been the same if this element had been expressly included in instruction No. 3. Thus, the instructional error was harmless beyond a reasonable doubt and does not require reversal of Armagost's conviction.

### 3. MOTION FOR NEW TRIAL

Armagost argues that the district court erred in failing to grant his motion for a new trial on the bases that (a) the evidence was insufficient to sustain his conviction, (b) instruction No. 3 was erroneous in that it failed to include an attempt to arrest as an essential element of the offense, and (c) the court failed to give his proposed jury instruction containing the definition of arrest. Because we have already analyzed and disposed of each of these issues above, we will not address them further here. This assignment of error has no merit.

### 4. MOTION FOR JUDGMENT NOTWITHSTANDING VERDICT

[10] Armagost's final assignment of error argues that the district court erred in overruling his motion for judgment notwithstanding the verdict. The Nebraska Supreme Court has held that motions for judgment notwithstanding the verdict are limited to civil proceedings and are unavailable under Nebraska criminal procedure. See *State v. Miller*, 240 Neb. 297, 481 N.W.2d 580 (1992). Accordingly, we conclude that the district court did not err in failing to grant such motion in this case.

### V. CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED.