STATE OF NEBRASKA, APPELLEE, v. SUSANA MURO,
ALSO KNOWN AS SUSANA MURO ANDRADE, APPELLANT.
695 N.W.2d 425

Filed April 28, 2005.   No. S-03-1399.

Derek L. Mitchell for appellant.

Jon Bruning, Attorney General, and James H. Spears for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Susana Muro was convicted by the district court for Dawson County of child abuse resulting in the death of a child and sentenced to 20 years' imprisonment. The Nebraska Court of Appeals affirmed her conviction, finding there was sufficient evidence that she knowingly failed to secure necessary medical care for her daughter, Vivianna Muro, after becoming aware that the child had sustained a serious injury, and that such failure was a proximate cause of the child's death. *State v. Muro*, 13 Neb. App. 38, 688 N.W.2d 148 (2004). On further review, we conclude that while the evidence in the record is sufficient to support the finding that Muro knowingly and intentionally caused or permitted Vivianna to be deprived of medical care, it is insufficient as a matter of law to establish that such deprivation caused the child's death.

## I. BACKGROUND

### 1. FACTS

The facts are set forth in detail in the published opinion of the Court of Appeals. *State v. Muro, supra.* We summarize here the sequence of events which preceded the death of Vivianna on October 28, 2002. Additional facts and opinion evidence will be discussed in our analysis of the causation issue.

On October 27, 2002, Muro resided in Lexington, Nebraska, with her husband, Jose Muro (Jose), and their children, a 4-year-old son and 8-month-old Vivianna. At approximately 3:20 p.m. on that day, Muro left the children at home in the care of Jose while she ran errands. Vivianna appeared normal at that time. When Muro returned home sometime after 6 p.m., Jose was holding Vivianna but the child was not crying as she usually did when held by Jose. Muro inquired about Vivianna, and Jose replied that she was asleep. He placed her in her crib while Muro fed their son and performed various chores.

Between 7 and 7:30 p.m., Muro took Vivianna from her crib and noticed that something was wrong. Vivianna was unresponsive and appeared "dazed," and her eyes were "half open, half closed." Muro observed that Vivianna was "limp, kind of like a rag doll." Over the next several hours, both Muro and Jose called the Tri-County Hospital in Lexington for advice without identifying themselves or disclosing that Vivianna was limp and unresponsive. A nurse testified that she advised the unidentified callers to bring the baby to the emergency room if they had any concern or uncertainty regarding her condition. Muro then called her mother-in-law, who resided in another state, and asked for advice about a " 'friend's' " baby who appeared " 'dazed' " and " 'loose,' " specifically denying that she was referring to Vivianna. Muro's mother-in-law told her to tell her friend to take the baby to the hospital as soon as possible. Muro and Jose then took Vivianna to Tri-County Hospital.

When she arrived at the hospital at approximately 11 p.m., Vivianna was not breathing, her pupils were fixed and dilated, and she was limp and cold. Although medical personnel performing resuscitation were able to establish a heartbeat, they were never able to stabilize Vivianna or establish spontaneous respiration. A physician diagnosed various injuries, including a hematoma on the left side of her head. The physician concluded that the severity of the child's condition necessitated transfer to Good Samaritan Hospital in Kearney, Nebraska, and made the necessary arrangements. An ambulance crew accompanied by Dr. Stephen Parys, a pediatrician, arrived in Lexington and transported Vivianna to Good Samaritan Hospital. During the transfer process, Parys noted various injuries, including the hematoma,

bruising, and an old rib fracture depicted on x ray. He suspected that the injuries were traumatic in origin. Parys continued assisted breathing measures during the transfer, but the child remained unresponsive and unconscious.

Upon arrival at Good Samaritan Hospital at approximately 1:30 a.m., a CT scan was performed which revealed a slightly displaced skull fracture in the left parietal area with an overlying hematoma, as well as other signs of brain injury. After consulting a neurosurgeon who concluded that surgical intervention was not feasible, Parys and other physicians conducted tests from which they concluded that brain death had occurred. Parys explained Vivianna's condition to Muro and Jose, and they made the decision to discontinue life support. Death occurred at 6:28 a.m. on October 28, 2002.

An autopsy was performed by Dr. Blaine Roffman the next day. He made certain findings indicative of trauma, including torn skin over the right lateral thorax and the left anterior thorax, broken and hemorrhaged fingernails, recent bruising of the right side of the neck and the midline of the forehead, bruising to "the left of the oral cavity on the cheek," and a fracture of the left parietal skull. At trial, Roffman ultimately opined that the cause of death was "a fracture of the left parietal skull, which resulted in cerebral edema [swelling], which resulted in brain death."

There is no contention or evidence that Muro inflicted or witnessed the infliction of the fatal injuries. There is evidence that the injuries occurred during the period when Muro was away from the family home on October 27, 2002.

### 2. PROCEDURAL HISTORY

### (a) District Court

On November 19, 2002, Muro was charged by information with felony child abuse resulting in death under Neb. Rev. Stat. § 28-707 (Cum. Supp. 2004). Muro stood mute at her arraignment, and a plea of not guilty was entered for her. Following a bench trial at which Muro testified on her own behalf, the district court entered an order finding Muro guilty of the charged crime. The court found that Muro knowingly and intentionally failed to provide necessary care, that Vivianna's condition worsened as a result, and that the worsening of her condition ultimately led to

her death. The court specifically found that Muro's deprivation of care for Vivianna contributed in a natural and continuous sequence to Vivianna's death. At a subsequent sentencing hearing, the district court imposed the minimum sentence for a Class IB felony of imprisonment for 20 years. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2002).

## (b) Court of Appeals

Muro perfected a timely appeal in which she asserted that the evidence was insufficient to sustain her conviction and that her sentence was excessive. *State v. Muro*, 13 Neb. App. 38, 688 N.W.2d 148 (2004). The Court of Appeals affirmed the conviction and sentence. After summarizing the evidence viewed in a light most favorable to the State, the majority of the panel determined that "[t]he evidence was sufficient to support the trial court's conclusion that Muro acted knowingly and intentionally, that her actions knowingly and intentionally deprived Vivianna of necessary medical care, and that such denial of medical care was a proximate cause of Vivianna's death." *Id.* at 55, 688 N.W.2d at 161. The majority further found no error in the sentence imposed by the district court. The dissenting judge concluded that the medical evidence was insufficient as a matter of law to prove beyond a reasonable doubt that Muro's delay in seeking treatment caused Vivianna's death. We granted Muro's petition for further review.

## II. ASSIGNMENTS OF ERROR

In her petition for further review, Muro assigns, restated, that the Court of Appeals erred in (1) ruling that the State provided sufficient evidence that any act or omission done by her was the proximate cause or resulted in the death of Vivianna, (2) finding that any act of omission by Muro was done knowingly and intentionally, and (3) finding that the trial court did not abuse its discretion in imposing a prison sentence of 20 years in lieu of probation.

## III. STANDARD OF REVIEW

[1] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hudson*, 268 Neb. 151, 680 N.W.2d 603 (2004); *State v. Weaver*, 267 Neb. 826, 677 N.W.2d 502 (2004).

In a bench trial of a criminal case, the trial court's findings have the effect of a verdict and will not be set aside unless clearly erroneous. *State v. Hansen*, 252 Neb. 489, 562 N.W.2d 840 (1997). The determination of causation, including proximate causation, is ordinarily a question of fact. *State v. Sommers*, 201 Neb. 809, 272 N.W.2d 367 (1978). See *Stahlecker v. Ford Motor Co.*, 266 Neb. 601, 667 N.W.2d 244 (2003).

## IV. ANALYSIS

Muro was charged with Class IB felony child abuse under § 28-707, which provides in relevant part:

(1) A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:

. . . .

(c) Deprived of necessary food, clothing, shelter, or care;

. . . .

(3) Child abuse is a Class I misdemeanor if the offense is committed negligently.

(4) Child abuse is a Class IIIA felony if the offense is committed knowingly and intentionally and does not result in serious bodily injury as defined in section 28-109.

(5) Child abuse is a Class III felony if the offense is committed knowingly and intentionally and results in serious bodily injury as defined in such section.

(6) Child abuse is a Class IB felony if the offense is committed knowingly and intentionally and results in the death of such child.

Under this statute, the proscribed conduct for felony child abuse and misdemeanor child abuse is exactly the same; it is the actor's state of mind which differentiates the offenses. *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998). Similarly, the three gradations of felony child abuse set forth in § 28-707 are all based upon the same proscribed conduct; the differentiating factor is the degree of harm caused by such conduct.

It is undisputed that Muro did not seek medical care for Vivianna for a period of approximately 4 hours after she first noticed the child's unresponsiveness and other abnormal symptoms. Muro argues in this appeal that the State failed to prove both that the deprivation of care was knowing and intentional on her part and that it resulted in the death of Vivianna.

## 1. STATE OF MIND

Muro argues that because she did not realize or comprehend the extent of Vivianna's injuries, she could not have knowingly and intentionally deprived Vivianna of necessary medical care. The Court of Appeals examined the evidence pertaining to the events which transpired during the 4-hour period before Vivianna was taken to the hospital and concluded that such evidence, viewed in a light favorable to the State, was sufficient to support an inference that Muro knowingly and intentionally failed to provide necessary medical care for Vivianna after the seriousness of the child's condition became readily apparent to her. See *State v. Muro*, 13 Neb. App. 38, 688 N.W.2d 148 (2004). We agree with the disposition of this issue by the Court of Appeals and the reasoning upon which it is based.

## 2. CAUSATION

It is clear from the record that Vivianna sustained a serious traumatic head injury inflicted by someone other than Muro. The issue, as accurately stated by the Court of Appeals, is

> whether, viewing the evidence in a light most favorable to the prosecution, the court was clearly erroneous in finding that Muro's failure to seek medical treatment for Vivianna was a proximate cause of her death. In other words, does the evidence support a finding that Vivianna's death would not have occurred had Muro not failed to seek medical treatment for Vivianna?

*Id.* at 50, 688 N.W.2d at 158.

### (a) Principles of Law

In criminal cases where a defendant's conduct is alleged to have resulted in death, we have defined proximate cause as " 'a moving or effective cause or fault which, in the natural and continuous sequence, unbroken by an efficient intervening cause,

produces the death and without which the death would not have occurred.' " *State v. William,* 231 Neb. 84, 88, 435 N.W.2d 174, 177 (1989), quoting *State v. Sommers,* 201 Neb. 809, 272 N.W.2d 367 (1978). " 'Conduct is a cause of an event if the event in question would not have occurred but for that conduct; conversely, conduct is not a cause of an event if that event would have occurred without such conduct.' " *Id.,* quoting *State v. Dixon,* 222 Neb. 787, 387 N.W.2d 682 (1986).

Applying these principles, we held in *State v. William, supra,* a motor vehicle homicide case, that a motorcyclist's unlawful acts in attempting to avoid apprehension were a proximate cause of his passenger's death from injuries sustained when the motorcycle collided with another vehicle during a police pursuit. In *State v. Sommers, supra,* another motor vehicle homicide case, the issue was whether a motorist's intoxication was a proximate cause of a death which resulted from a collision on an icy bridge. Based on evidence demonstrating that the intoxication caused the defendant to be physically impaired and that other nonimpaired drivers were able to avoid collisions at the scene, we concluded the evidence was sufficient to permit a finding that the defendant's intoxication was a proximate cause of the decedent's death. In *State v. Dixon, supra,* we held that a victim's fatal heart attack, proximately caused by a defendant's felonious conduct in burglarizing the victim's home, established the causal connection necessary to sustain a felony murder conviction. In reaching this conclusion, we relied in part upon a physician's testimony that the " 'shock value and the emotional trauma inflicted upon [the victim] at the time of the break-in caused the arrhythmia, which caused her death.' " *Id.* at 793, 387 N.W.2d at 686.

However, in *State v. Doyle,* 205 Neb. 234, 287 N.W.2d 59 (1980), an appeal from a manslaughter conviction, we held that the evidence was insufficient to establish that the defendant's conduct was a proximate cause of the death. A dead human infant was found on premises occupied by the defendant, but there was no evidence of internal or external trauma and a pathologist was unable to state the cause of death. Witnesses testified that the defendant appeared to be pregnant before the body was found and that she appeared not to be pregnant thereafter. In determining that this evidence was insufficient to support the manslaughter

conviction, we reasoned that there was "no evidence offered by the State that had the defendant done something, which she did not do, the infant would have lived; nor that had she not done anything, which she did do, the infant would have lived." *Id.* at 239, 287 N.W.2d at 63.

### (b) Medical Testimony

In this case, the State attempted to prove through the testimony of two physicians that Muro's conduct was a proximate cause of the death. Parys, the pediatrician who treated Vivianna during and after her transport to Good Samaritan Hospital, testified at trial that there was very little chance of saving her life while she was in his care. Parys did state, with reasonable medical certainty, that "[i]f treatment was sought earlier, then there would've been a chance of survival." On cross-examination, he testified that he could not give a percentage of what the chance for survival would have been. He stated that if treatment had been sought immediately, survival was possible, but he could not say it was probable. He opined that Vivianna "might have survived" if treatment was sought earlier. He further testified that a person's condition progressively worsens after the type of skull injury suffered by Vivianna.

Dr. Randell Alexander, a pediatrician and an expert on child abuse, testified that a brain could swell to the degree seen in Vivianna within an hour, or it could also take several hours. He testified that in most cases with this type of injury, a child will die within 1 to 2 hours even with medical care. He opined, based upon the fact that Vivianna was still alive 4 hours after the trauma was inflicted, that "this is an injury that might have been survivable." He further testified that because of the delay in seeking treatment, Vivianna's survival was hopeless, but that there may have been a small amount of hope if prompt treatment had been sought. He testified that there was an opportunity to save Vivianna if treatment had been sought earlier and that if 100 children survived this type of injury for 4 hours, "a substantial fraction" could be saved with early treatment.

On cross-examination, Alexander admitted the possibility that doctors may not have been able to save Vivianna even if Muro had sought immediate treatment. He could not say that she

would have survived if treatment had been sought 3 hours earlier. Alexander testified there was a reasonable likelihood that Vivianna could have survived with early treatment, but declined to say whether survival was possible or probable. He testified that her chance of survival with early treatment was more than 5 percent but less than 95 percent. On redirect, he stated that the long delay in seeking treatment and the fact that most children would have died within 2 hours of the injury suggested that Vivianna's injury was not "invariably fatal." Thus, he opined that the delay in treatment "may have" contributed to her death.

(c) Resolution by Court of Appeals

Based upon the foregoing evidence and legal principles, a majority of the Court of Appeals panel concluded that it was "sufficient that the evidence establish that the injury could have been survived but for a defendant's actions." *State v. Muro*, 13 Neb. App. 38, 54, 688 N.W.2d 148, 161 (2004). The majority thus determined that evidence of an unquantified chance of survival with prompt treatment was sufficient to establish that Muro's conduct was a proximate cause of Vivianna's death. The dissenting judge reasoned that because there was no evidence that survival would have been probable with prompt medical care, it cannot be said that Muro's failure to seek prompt care was a proximate cause of Vivianna's death. The dissenting judge considered the "core question" to be "whether, with the requisite degree of probability, earlier treatment would have made a difference—meaning whether it was probable that Vivianna would have lived, because the proof must show that the delay caused her death." *Id.* at 60, 688 N.W.2d at 164 (Sievers, Judge, dissenting). Based in part upon our decision in *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999), the dissenting judge reasoned that in order to establish the element of proximate cause, the State had the burden to prove that survival in the absence of the unlawful conduct would have been probable, i.e., more likely than not, noting that

a criminal conviction which requires proof of guilt beyond a reasonable doubt should not be based upon medical evidence of proximate cause which would, as a matter of law, clearly fall short of the proof needed to support a workers'

compensation claim, a personal injury claim, or a medical malpractice claim.

*State v. Muro*, 13 Neb. App. at 62, 688 N.W.2d at 165-66 (Sievers, Judge, dissenting).

(d) Disposition on Further Review

Our case law, as summarized above, establishes that criminal conduct is a proximate cause of an event if the event in question would not have occurred but for that conduct; conversely, conduct is not a proximate cause of an event if that event would have occurred without such conduct. *State v. William*, 231 Neb. 84, 435 N.W.2d 174 (1989); *State v. Dixon*, 222 Neb. 787, 387 N.W.2d 682 (1986). The burden in a criminal proceeding is on the State to produce proof beyond a reasonable doubt of every element of a charged offense. *State v. Sims*, 258 Neb. 357, 603 N.W.2d 431 (1999). Thus, to establish that Muro's unlawful conduct was a proximate cause of Vivianna's death, the State was required to prove beyond a reasonable doubt that but for Muro's delay in seeking medical treatment, Vivianna would have survived her preexisting traumatic head injury. We agree with the dissenting judge that the State did not meet this burden. The State proved only the *possibility* of survival with earlier treatment. Such proof is insufficient to satisfy even the lesser civil burden of proof by a preponderance of the evidence. See *Doe v. Zedek, supra.*

Viewing the evidence in this case in the light most favorable to the prosecution, a finder of fact could not reasonably conclude beyond a reasonable doubt that but for Muro's unlawful conduct, Vivianna would have survived. Accordingly, the evidence is legally insufficient to establish that Vivianna's death resulted from the conduct in question.

The State's failure to prove that Muro's unlawful conduct caused the death, however, does not relieve her of criminal responsibility. As noted above, § 28-707 includes multiple gradations of felony child abuse, depending upon the result of the abusive conduct. We agree with the trial court and the Court of Appeals that the State proved beyond a reasonable doubt that Muro knowingly and intentionally deprived Vivianna of necessary care. That finding is sufficient to sustain a conviction for Class IIIA felony child abuse under § 28-707(4) without any

proof of resulting harm to the child. Accordingly, Muro's sentence must be vacated and the cause remanded for imposition of an appropriate sentence for the Class IIIA felony.

## V. CONCLUSION

For the reasons discussed, we affirm the judgment of the Court of Appeals which affirmed Muro's conviction of felony child abuse. However, based upon our determination that the Court of Appeals erred in finding that the evidence was sufficient to establish that the child abuse resulted in death, and therefore constituted a Class IB felony under § 28-707, we vacate the sentence and remand the cause to the Court of Appeals. We direct that court to remand the cause to the district court with directions to impose an appropriate sentence for Class IIIA felony child abuse. See, § 28-707(4); *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002).

AFFIRMED IN PART, AND IN PART SENTENCE VACATED
AND CAUSE REMANDED WITH DIRECTIONS.