763 N.W.2d 91 (2009)
277 Neb. 502
STATE of Nebraska, Appellee,
v.
William C. FLOYD, Jr., Appellant.
No. S-08-018.
Supreme Court of Nebraska.
April 3, 2009.
*95 Thomas C. Riley, Douglas County Public Defender, for appellant.
Jon Bruning, Attorney General, and James D. Smith, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
William C. Floyd, Jr., was convicted of first degree murder and manslaughter of an unborn child. Floyd was sentenced to life imprisonment on the murder conviction and 20 to 20 years' imprisonment on the manslaughter conviction. Floyd appeals certain evidentiary rulings, as well as the district court's denial of his motion for mistrial and motions to strike certain jurors. We affirm.

FACTUAL BACKGROUND
On July 30, 2004, Floyd was charged with first degree murder, manslaughter of an unborn child, and being a felon in possession of a weapon. Floyd was originally convicted in 2005 of these charges; however, the murder and manslaughter convictions were reversed on appeal by this court as the result of improper communication *96 between the jury and a bailiff.[1]
Floyd was retried. Following a jury trial, he was again convicted of first degree murder and manslaughter of an unborn child. Floyd was sentenced to life imprisonment on the murder conviction and 20 to 20 years' imprisonment on the manslaughter conviction.
The charges against Floyd arose out of the shooting death of Destiny Davis, who was pregnant at the time of her death. The evidence establishes that on October 7, 2003, Davis and several other individuals, including Davis' sister, Shantelle Vickers, were in the living room in a home in Omaha, Nebraska. Just before 10:30 p.m., Vickers left the living room for the bathroom. The other individuals, including Davis, remained in the living room. While in the bathroom, Vickers heard gunshots. Those gunshots were fired from outside the living room window. Davis and two others were hit; Davis and her unborn child were killed. Vickers testified that after hearing the gunshots, she looked out the bathroom window and saw a man she identified as Floyd outside the house.
The State's theory of prosecution was that Vickers, who had previously been romantically involved with Floyd, was the intended victim of the shooting. In support of this theory, Vickers testified as to her combative relationship with Floyd, including specific incidents in which Floyd acted in a violent manner toward her. In particular, Vickers testified to four separate incidents: one on January 21, 2003; another sometime in the fall of 2003; one on October 6, 2003; and one in the afternoon on October 7, 2003, the day of the shooting. Floyd objected to the introduction of all but the October 7 incident. Floyd's motion in limine was denied. The court concluded that the prior history of violence went not to Floyd's propensity for violence, but to Floyd's motive or intent to commit the crimes charged.
Voir dire in this case was held on August 20 and 21, 2007. At the conclusion of the first day of voir dire, the jury was admonished to not "read, view or listen to any reports about this case.... If any accounts of this case do come to your attention, you must immediately disregard them."
An Omaha World-Herald newspaper article regarding the trial was published during the jury selection process and appeared in both the August 20, 2007, evening edition and the August 21 morning edition of the newspaper. Based upon the publication of the article, Floyd motioned for a mistrial. The court reserved ruling on the motion and conducted an inquiry into the jury pool's exposure to the article.
During its inquiry, eight members of the jury panel admitted exposure to the article in some form. Each member of the panel was questioned separately. Four prospective jurors were struck for cause at the conclusion of their individual questioning; another two prospective jurors were excused for cause at the conclusion of all questioning. At that time, the district court also denied Floyd's motion for mistrial.
Floyd also objected to the two remaining members of the panel, both of whom eventually sat on the jury. The district court denied those motions. The questioning of juror D.W. established that he saw the newspaper of a fellow prospective juror and noticed a headline that contained the words "Floyd," "retrial," and "2003." *97 D.W. indicated that once he saw the name and year, he "just looked down," and could not tell what the exact headline was and had no idea why a retrial was necessary. As for juror F.W., she testified that she was skimming the newspaper and saw the name "William Floyd" and that she "quickly put it [the newspaper] into the trash, I mean, as fast as I probably have in my life." F.W. denied seeing or reading any other information from the article.

ASSIGNMENTS OF ERROR
On appeal, Floyd contends, restated, that the district court erred in (1) admitting evidence of specific incidents of Floyd's abuse of Vickers; (2) basing its ruling on the admissibility of evidence pursuant to Neb. Evid. R. 404, Neb.Rev.Stat. § 27-404 (Reissue 2008), in part on testimony from a prior rule 404 hearing; (3) using an incorrect definition of "clear and convincing" in deciding whether the State met its burden under rule 404; (4) refusing to admit evidence of specific incidents of violence by Vickers toward her former and current husbands; and (5) denying Floyd's motion to strike or motion for mistrial due to the fact that several prospective jurors were exposed to a newspaper article regarding Floyd's retrial.

STANDARD OF REVIEW
In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility.[2] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion.[3]
It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under Neb. Evid. R. 403 and rule 404(2), Neb.Rev.Stat. §§ 27-403 (Reissue 2008) and 27-404(2), and the trial court's decision will not be reversed absent an abuse of discretion.[4]
The retention or rejection of a venireperson as a juror is a matter of discretion with the trial court and is subject to reversal only when clearly wrong.[5] The decision whether to grant a motion for mistrial is within the discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion.[6]

ANALYSIS
Rule 404 Evidence.
In his first assignment of error, Floyd contends that the district court erred in admitting evidence of specific acts of abuse he allegedly committed against Vickers. In connection with this assignment of error, Floyd also argues that the district court erred in considering evidence from a prior hearing and in utilizing the wrong standard when concluding that the State had met its burden of showing that he, in fact, committed the prior conduct testified to by Vickers.
*98 We first consider Floyd's allegation that the district court improperly considered testimony from a previous hearing in concluding that evidence of specific incidents of Floyd's abuse of Vickers was admissible.
Prior to Floyd's first trial, a rule 404 hearing was held with regard to the previous abuse of Vickers. Upon retrial, the trial court declined to take judicial notice of the prior hearing and instead held a new hearing. At this new hearing, Vickers was cross-examined extensively with respect to her testimony at the first hearing. The district court then referenced this testimony in its rule 404 order, noting that Vickers' testimony was generally consistent with that prior testimony.
Contrary to Floyd's assertion that the district court relied upon this prior testimony when making its rule 404 determination, a review of the order makes it clear that such reference was instead done in response to Floyd's counsel's continual attacks on Vickers' credibility. Other than in regard to Vickers' credibility, there is no indication the district court relied on any of the previous testimony in reaching its conclusion that the evidence of specific incidents of Floyd's abuse of Vickers was admissible.
Floyd next alleges that the district court relied upon an incorrect standard when concluding the State had met its burden of introducing the prior acts. Section 27-404(3) provides in relevant part that in order to be admissible, the State must prove by clear and convincing evidence that the defendant committed the prior acts. In the district court's order, it acknowledged such clear and convincing standard and suggested that this court had not yet defined clear and convincing evidence in the rule 404 context. The order then referenced a definition of "clear proof" taken from an Iowa Supreme Court case as "helpful," though it noted that it was not "controlling precedent."
We note that under these circumstances, the decision to cite the Iowa authority in question was inapt, particularly since that authority did not explicitly define the term "clear and convincing." We also note that, in fact, "clear and convincing evidence" has been previously defined under Nebraska law. To the extent it was not clear before, we specifically note that the definition of that term is the same in this context as it is in every other context under Nebraska law. It is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved.[7]
Nevertheless, we disagree with Floyd's characterization of the district court's order. While the order undisputedly refers to a "clear proof" standard, it also explicitly notes that the standard is not controlling. At various other points in the order, the district court again notes that it is applying a clear and convincing evidence standard. And the district court concludes the relevant portion of the order by noting that "the State has met the threshold requirement imposed by Rule 404(3)," which is the standard of clear and convincing evidence. Indeed, the district court not only found that the State had met the requirements of § 27-404(3), but in its order, also noted that "[the] evidence describes criminal conduct and is sufficient to warrant submission to a trier of fact if [Floyd] had been charged with such crimes." We further note that other than quoting the "clear proof" standard at the beginning of its analysis, the district court does not rely on that language when reaching its conclusion. Floyd's argument that *99 the district court relied upon an incorrect standard is without merit.
And to the extent Floyd is also arguing that the State failed to prove by clear and convincing evidence that Floyd committed the specific incidents of prior abuse toward Vickers, we disagree. Pursuant to § 27-404(3), we review the district court's findings of fact in such an instance for clear error.[8] In this case, we find no clear error in those factual findings, and therefore, we conclude that the State proved by clear and convincing evidence that Floyd committed the acts at issue.
Finally, we turn to Floyd's contention that the district court erred in admitting evidence of specific incidents of abuse committed by Floyd and against Vickers. In this instance, we review the district court's order for an abuse of discretion. The admissibility of such evidence is controlled by § 27-404. Subsection (1) generally provides that "[e]vidence of a person's character or a trait of his or her character is not admissible for the purpose of proving that he or she acted in conformity therewith...." However, subsection (2) further provides that
[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
An appellate court's analysis under § 27-404(2) considers whether the (1) evidence was relevant for some purpose other than to prove the character of a person to show that he or she acted in conformity therewith; (2) probative value of the evidence is substantially outweighed by its potential for unfair prejudice; and (3) trial court, if requested, instructed the jury to consider the evidence only for the limited purpose for which it was admitted.[9]
Therefore, we first consider whether the evidence of prior bad acts was relevant for some purpose other than to show Floyd's propensity to commit the crimes charged in this case. The State argued, and the district court agreed, that evidence of specific instances of Floyd's abuse of Vickers was admissible in order to show Floyd's motive or intent.
In this case, the State's theory of prosecution was that Vickers was the intended victim of the shooting but that, by mistake, Floyd intentionally killed Davis. The jury was instructed on transferred intent. The State argues that this instruction, as well as the State's theory of prosecution, would have made little sense to the jury unless it was given some history regarding Floyd and Vickers' relationship and Floyd's motive or intent to kill Vickers. The State therefore contends that evidence of Floyd's abuse of Vickers was relevant to show that Floyd had the motive or intent to kill Vickers.
We have held that prior acts evidence may be offered for the purpose of proving intent where intent is an element of the charged offense.[10] And motive is *100 defined as that which leads or tempts the mind to indulge in a criminal act.[11] While motive is not an element of first degree murder, any motive for the crime charged is relevant to the State's proof of the intent element.[12]
Evidence of the prior incidents of abuse against Vickers by Floyd is probative with respect to the nature of Floyd's relationship with Vickers and the hostility he held toward her. And without evidence of such relationship and hostility, the State's transferred intent theory would make little sense. We therefore conclude that Floyd's prior abuse of Vickers was relevant to establish Floyd's motive or intent with respect to the charges against him.
Having concluded that the evidence of Floyd's prior abuse of Vickers was relevant for proper purposes under § 27-404(2), we next consider whether the probative value of such evidence is outweighed by its potential for unfair prejudice.
As an initial matter, we note Floyd argues that the district court never engaged in an analysis under § 27-403. However, our review of the district court's order does not support this contention. To the contrary, the district court's order includes a section entitled "Rule 403." It is clear that the district court analyzed this issue and explicitly concluded that "the probative value of the testimony is not outweighed by a danger of unfair prejudice."
An analysis under § 27-403 requires a court to weigh the probative value of particular evidence against the danger of unfair prejudice. As was concluded above, the evidence of Floyd's prior abuse is probative as to his motive or intent to harm Vickers; without its introduction, the State's theory of prosecution makes little sense.
In considering whether this value is outweighed by the danger of unfair prejudice, we note that the number of incidents to which Vickers testified was limited by the State. Moreover, three of the four incidents in question all happened within a few months of Davis' murder, the earliest was less than 9 months prior. Such proximity in time to the shooting suggests a higher probative value than if the incidents had been more remote in time. We, too, conclude that the probative value of the evidence of Floyd's prior abuse was not substantially outweighed by the potential for unfair prejudice.
Finally, we note that limiting instructions were given by the district court before Vickers testified to each instance of abuse.
We conclude that the district court did not abuse its discretion in admitting evidence of specific incidents of Floyd's abuse of Vickers. Floyd's first, second, and third assignments of error are therefore without merit.

Admissibility of Vickers' Prior Bad Acts.
In his fourth assignment of error, Floyd contends that the district court erred in not allowing him to introduce evidence of "specific incidents of Vickers' assaultive behavior [toward her former and current husbands] to combat the allegations" that Vickers was abused by Floyd.[13] Floyd contends that his inability to introduce such acts limited his ability to attack Vickers' credibility. Again, we note that we review the district court's *101 rulings regarding the admissibility of evidence for an abuse of discretion.
As was noted above, § 27-404(1) generally provides that "[e]vidence of a person's character or a trait of his or her character is not admissible for the purposes of proving that he or she acted in conformity therewith...." There are exceptions to this general rule. As relevant in this case, § 27-404(1) provides as follows:
(b) Evidence of a pertinent trait of character of the victim of the crime offered by an accused or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.... or
(c) Evidence of the character of a witness as provided in sections 27-607 to 27-609 [dealing with the impeachment of witnesses].
Assuming without deciding that Vickers is a victim within the meaning of the statute, § 27-404(1)(b) would nevertheless be inapplicable. In order to be admissible, the evidence in question must be of a pertinent trait of character. "`[P]ertinent'" in the context of Fed.R.Evid. 404(a) is synonymous with "`relevant,'"[14] which is defined in Fed.R.Evid. 401, as well as in Neb. Evid. R. 401, Neb.Rev.Stat. § 27-401 (Reissue 2008). Section 27-401 defines "[r]elevant evidence" as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
We conclude, however, that any evidence of specific instances of Vickers' assaultive behavior is not pertinent to this case. That Vickers and her former and current husbands might have had violent relation-ships is of no consequence when considering whether Floyd had the motive or intent to harm Vickers or whether he in fact fired the shot that killed Davis and her unborn child. As such, any specific instances of Vickers' behavior do not fall within the exception provided by § 27-404(1)(b).
Nor is the evidence admissible to impeach Vickers' credibility under § 27-404(1)(c). The ability of a party to attack the credibility of a witness is set forth in Neb. Evid. R. 607 to 609, Neb.Rev.Stat. §§ 27-607 to 27-609 (Reissue 2008). Section 27-608 provides:
(1) The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion, but subject to these limitations: (a) The evidence may refer only to character for truthfulness or untruthfulness....
(2) Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in section 27-609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness (a) concerning his character for truthfulness or untruthfulness....
In this case, whether Vickers might have engaged in assaultive behavior in relationships with her former and current husbands is not probative to the truthfulness of her testimony that Floyd had the motive or intent to shoot her, or her testimony that Floyd fired the shot that killed Davis. As such, the evidence in question would be inadmissible to attack Vickers' credibility.
The district court did not abuse its discretion by refusing to admit evidence of Vickers' prior assaultive behavior. Floyd's *102 fourth assignment of error is without merit.

Motion to Strike/Motion for Mistrial Regarding Jurors' Exposure to Newspaper Article.
In his fifth and final assignment of error, Floyd argues that the district court erred in not granting his motion for mistrial or, in the alternative, motion to strike jurors D.W. and F.W. as a result of their exposure to a newspaper article.
Neb.Rev.Stat. § 29-2006 (Reissue 2008) provides in relevant part:
The following shall be good causes for challenge to any person called as a juror or alternate juror, on the trial of any indictment: ... (2) that he has formed or expressed an opinion as to the guilt or innocence of the accused; Provided, if a juror or alternate juror shall state that he has formed or expressed an opinion as to the guilt or innocence of the accused, the court shall thereupon proceed to examine, on oath, such juror or alternate juror as to the ground of such opinion; and if it shall appear to have been founded upon reading newspaper statements, communications, comments or reports, or upon rumor or hearsay, and not upon conversations with witnesses of the transactions or reading reports of their testimony or hearing them testify, and the juror or alternate juror shall say on oath that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that such juror or alternate juror is impartial and will render such verdict, may, in its discretion, admit such juror or alternate juror as competent to serve in such case....
In this case, Floyd's argument that the motions to strike D.W. and F.W. should have been granted is without merit. There is simply no evidence to suggest that D.W. or F.W. had even formed an opinion about Floyd's guilt. At most, there is some evidence that both D.W. and F.W. saw Floyd's name in a newspaper headline and, in accordance with the district court's admonition, "immediately disregard[ed]" it. We therefore conclude that the district court did not abuse its discretion in denying Floyd's motion to strike these two jurors.
Nor did the district court abuse its discretion in denying Floyd's motion for mistrial. In order for a verdict to be set aside because of the prejudicial effect of newspaper accounts on jurors, there must be evidence presented that the jurors read newspaper accounts and that the accounts were unfair or prejudicial to the defendant.[15] In order for jury misconduct to be the basis for a new trial, the misconduct must not only occur but it must be prejudicial to the defendant.[16] A criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance of the evidence, (1) the existence of jury misconduct and (2) that such misconduct was prejudicial to the extent that the defendant was denied a fair trial.[17]
This court's decision in State v. Anderson[18] is helpful. In Anderson, we held that jury misconduct occurred when several jurors read a newspaper headline about the defendant's retrial and then discussed the headline with other jurors. Despite this misconduct, however, we concluded *103 that the defendant failed to meet his burden of showing that his right to a fair trial was prejudiced by the misconduct. We noted:
The examination of the jurors in this cause by the trial court and both counsel failed to disclose either directly or inferentially that any of the jurors had been prejudiced by their exposure to the headline or subhead in question. Even though three of the jurors acknowledged that the subhead stated that the instant cause was a retrial, none of the jurors exhibited any knowledge as to the circumstances of the retrial or whether the first trial was terminated prior to its conclusion or was reversed on appeal. The mere use of the word retrial, without further explanation, does not automatically connote that a defendant was convicted of particular crimes in a prior trial, nor does it necessarily mean that a prior trial had reached its completion. Simply put, none of the jurors testified that they had any knowledge regarding a prior conviction or as to why [the defendant] was being granted a new trial.[19]
As an initial matter, we question whether D.W.'s and F.W.'s actions in reading a portion of the headline of the article in question constituted jury misconduct. Unlike the jurors in Anderson, who had the contents of the headline brought to their attention and then proceeded to discuss it, there is no evidence that suggests that D.W. or F.W. discussed the contents of the headline with anyone. In fact, the record establishes that F.W. threw the newspaper away "as fast as I probably have in my life." And D.W. indicated that he saw the article's headline and "just looked down" to avoid seeing anything further.
Moreover, we conclude that Floyd has failed to meet his burden of showing that his right to a fair trial was prejudiced by the alleged misconduct. We noted in Anderson that the "mere use of the word retrial" was not, on its own, prejudicial. And as in Anderson, there is nothing in the record that would suggest either D.W. or F.W. had any knowledge as to Floyd's prior conviction or as to why he was being granted a new trial. In fact, with respect to F.W., there is no evidence that she was even aware that Floyd's trial was a retrial. We therefore also conclude that the district court did not abuse its discretion in denying Floyd's motion for mistrial.
Floyd's fifth and final assignment of error is without merit.

CONCLUSION
Floyd's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] State v. Floyd, 272 Neb. 898, 725 N.W.2d 817 (2007), disapproved, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727.
[2] State v. Poe, 276 Neb. 258, 754 N.W.2d 393 (2008).
[3] Id.
[4] See State v. McPherson, 266 Neb. 734, 668 N.W.2d 504 (2003).
[5] State v. Hessler, 274 Neb. 478, 741 N.W.2d 406 (2007).
[6] State v. Gresham, 276 Neb. 187, 752 N.W.2d 571 (2008).
[7] Castellano v. Bitkower, 216 Neb. 806, 346 N.W.2d 249 (1984).
[8] Cf., State v. Wenke, 276 Neb. 901, 758 N.W.2d 405 (2008); State v. Draganescu, 276 Neb. 448, 755 N.W.2d 57 (2008); State v. Muro, 269 Neb. 703, 695 N.W.2d 425 (2005); State v. Neal, 265 Neb. 693, 658 N.W.2d 694 (2003); State v. Poe, 266 Neb. 437, 665 N.W.2d 654 (2003).
[9] State v. Trotter, 262 Neb. 443, 632 N.W.2d 325 (2001).
[10] See State v. Burdette, 259 Neb. 679, 611 N.W.2d 615 (2000).
[11] Id.
[12] See, id.; State v. McBride, 250 Neb. 636, 550 N.W.2d 659 (1996).
[13] Brief for appellant at 27.
[14] United States v. Angelini, 678 F.2d 380, 381 (1st Cir.1982).
[15] State v. Anderson, 252 Neb. 675, 564 N.W.2d 581 (1997).
[16] See id.
[17] Id.
[18] Id.
[19] Id. at 684, 564 N.W.2d at 587.