# CIRCUIT COURT OF THE CITY OF MARTINSVILLE

Commonwealth of Virginia

v.

Richard C. Wagoner, Jr.

October 10, 2012

Case No. CR11-462

By Judge G. Carter Greer

Following a four day trial, a jury convicted the Defendant of the felonious abuse and neglect of Joseph Steven Tuggle, an incapacitated adult, which abuse and neglect resulted in Tuggle's death, in violation of Va. Code § 18.2-369(B), as amended. "Any responsible person who abuses or neglects an incapacitated adult in violation of this section and the abuse or neglect results in the death of the incapacitated adult is guilty of a Class 3 felony." Pursuant to Rule 3A:15 of the Rules of the Supreme Court of Virginia, the defendant has filed a motion asking the court to set aside the verdict and to enter a judgment of acquittal. In his motion, the Defendant argues that the evidence was insufficient to support the verdict as a matter of law on two grounds: (1) that "the evidence failed to show that the Defendant knowingly and willfully acted in a manner that he knew would cause harm or death to Mr. Tuggle" and (2) that, "[a]ssuming, *arguendo*, the alleged abuse or neglect of Joseph Steven Tuggle by the Defendant, the Commonwealth failed to present any evidence that Mr. Tuggle would probably have lived but for the Defendant's alleged abuse or neglect." Initially, the court observes that the Defendant made both of these assertions in his motion to strike at the conclusion of the Commonwealth's case and in his renewed motion at the conclusion of all the evidence. The court, being of the opinion that the evidence was sufficient to sustain a conviction, denied the motion on both occasions.

In ruling on the present motion, the court is guided by the following language applicable to a motion to strike:

> The jury are the sole judges of the credibility and weight of testimony. If the evidence is relevant, it should be received, and the jury should be permitted to determine its credibility and weight. The trial court can strike out evidence that is relevant only where, *after giving full faith and credit to the witnesses and drawing all inferences from their testimony that a jury might fairly draw therefrom,* it plainly appears that the trial court would feel compelled to set aside a verdict found in accordance therewith.

*Limbaugh v. Commonwealth,* 149 Va. 383, 393, 140 S.E. 133 (1927) (emphasis added).

In a more recent case, the Court of Appeals stated as follows: "The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. (Citation omitted.) The fact finder is not required to believe all aspects of a witness' testimony; it may accept some parts as believable and reject other parts as implausible." *Goodman v. Commonwealth,* 37 Va. App. 374, 386, 558 S.E.2d 555 (2002). Having found the Defendant guilty, the jury drew all legitimate inferences and resolved all evidentiary conflicts in favor of the Commonwealth.

Since the parties are familiar with the evidence, the court will not recite all of the facts adduced at trial. Suffice it to say that the jury was entitled to find the following basic facts, viewed in the light most favorable to the Commonwealth.

On the evening of February 8, 2011, Joseph Tuggle, who was an incapacitated adult, was scalded by hot water while he was bathing himself at the group home owned by the Defendant's corporation. Having been informed by staff of the incident, Tameki Tarpley, a supervisor, on the following morning, ordered a van from another group home in order to take Tuggle to the hospital. While the van was in route to the hospital, Tarpley received a telephone call from Cindy Epley, the corporation's director, and Tarpley told her about the incident and that the van was transporting Tuggle to the hospital.

Epley then called the Defendant, who was president of the corporation, in order to report what had happened, and the Defendant told her that he wanted to see Tuggle before the van took him to the hospital. Epley then called Tarpley and told her to call the van back because the Defendant wanted to see Tuggle before he went to the hospital. Tarpley complied with Epley's request, and the van turned around and brought Tuggle back to the group home.

When Epley arrived at the group home shortly thereafter, the situation was chaotic. Tuggle was sitting in a wheelchair, a sheet was covering him, and all she could see was the top of his hand, which appeared red. A few minutes later, the Defendant arrived, and Larry Collins and another staff member stood Tuggle up and pulled away the sheet so that the Defendant could see Tuggle's burns, which were shocking and extensive.

The Defendant went with Epley to her car and told her, "Well, I guess Social Services will investigate us," (Tr. at 230) and he decided that Tuggle would be treated at the group home and not taken to the hospital. Later that day, Epley called the Defendant and stressed to him that he needed to report the incident to the Department of Behavioral Health and Developmental Services ("Department"), which is the licensing authority. The staff followed the treatment decision made by the Defendant and continually applied neosporine to Tuggle's wounds. Tuggle's condition gradually grew worse over the course of the next nine days. The wounds began to emit a bad odor and to discharge pus, and Tuggle's skin would pull off whenever staff changed Tuggle's sheets while Tuggle was seated in his wheelchair. Tuggle appeared to be in pain at times. The staff failed to chart accurately Tuggle's condition. On the evening of February 15th, officer Lane Clark of the Martinsville Police Department observed Tuggle's burns during a wellness check brought on by a 911 call, and the officer mistakenly concluded that Tuggle's burns, which he described as "road rash," were minor in nature.

Instead of reporting the scalding incident within twenty-four hours, which he was required to do by regulation, the Defendant notified Deborah Tankersley, the Department's Licensing Specialist, of the incident on February 16th, and he told Tankersley that Tuggle "got a little red where the water touched him like a sunburn." (Tr. at 343.)

On the morning of February 18th, the staff found Tuggle lying dead in his bed. During the autopsy, which was performed later that morning, a forensic pathologist found that Tuggle had sustained second and third degree burns to thirty percent of his total body surface area. The cause of death was sepsis and pneumonia secondary to "burns sustained from immersion in scalding water." (Tr. at 424.) The most severe burns were "along the right side (of the back) and along … the buttock region and the back of the legs." (Tr. at 424.)

Tuggle's burns were life-threatening and the type of injuries that would "get automatic admission to the Burn Unit." (Tr. at 122.) The treatment that Tuggle received was inappropriate. If Tuggle had received proper treatment, he would have had a thirteen to twenty-five percent chance of survival.

A. *The jury was entitled to find that the Defendant abused or neglected Tuggle.*

The court instructed the jury that " '[a]buse' means knowing and willful conduct that causes physical injury or pain." *See* Instruction No. 14. The court also instructed the jury that " '[n]eglect' means the knowing and willful failure by a responsible person to provide treatment, care, goods, or services which results in injury to the health or endangers the safety of an incapacitated adult." *See* Instruction No. 15. Relying upon *Ellis v. Commonwealth*, 29 Va. App. 548, 513 S.E.2d 453 (1999), and *Shanklin v. Commonwealth*, 53 Va. App. 683, 674 S.E.2d 577 (2009), both of which involved convictions of child neglect that the Court of Appeals reversed, the Defendant argues that "[t]he uncontradicted evidence of the Commonwealth clearly established that [he] was not aware that Tuggle would be at risk of further injury if he did not receive additional medical treatment." (Defendant's Memorandum, p. 19.) According to the Defendant, "the issue is not what he saw, but whether Wagoner was aware, or should have been aware, that Tuggle would be further injured if he did not receive additional treatment." (Defendant's Reply Brief, p. 10 (emphasis omitted).) The court identifies the issue in this manner: in view of what the Defendant observed as to Tuggle's burns, did the Defendant knowingly and willfully fail to provide necessary medical treatment?

The cases cited by the Defendant do not support his contention that his conduct was not knowing and willful, for they are distinguishable on their facts. In *Ellis, supra*, the defendant, who had two infants, turned on a burner to light a cigarette, forgot to turn the burner off, and went outside. In the ensuing fire that broke out in the apartment, the two children were injured. The defendant was convicted of child neglect, in violation of Va. Code § 18.2-371.1, and child cruelty, in violation of Va. Code § 40.1-103. On appeal, the defendant argued that the evidence was insufficient to prove that her actions were "willful," and the Court of Appeals agreed and reversed, stating that the evidence failed "to show that appellant left the apartment knowing the burner was on and in *conscious* disregard of the likely ignition of a grease fire that would ultimately endanger the lives of her children." *Id.*, 29 Va. App. at 555 (emphasis in original). The Court of Appeals further stated that "willful" as used in the statute, which is similar to the statute undergirding the case at bar, "generally means an act done with a bad purpose, without justifiable excuse, or without ground for believing it is lawful." *Id.* In *Shanklin, supra*, a four year old boy suffered burns from scalding water; instead of seeking medical treatment, the custodian applied ointment to the wounds, wrapped the child's feet and hands with gauze and duct tape, and took the child to the defendant, the custodian's mother, so that she could babysit the child for the evening. The defendant, who was convicted of felony child neglect, contended on appeal that the evidence

was insufficient to prove criminal negligence. In reversing the judgment of conviction, the Court of Appeals stated that the evidence failed "to show that appellant recognized the severity of Davion's injuries and willfully disregarded the importance of obtaining medical assistance," and that *"[t] he record instead demonstrates that she did not know how badly Davion was burned* so she had no reason to call for medical help or to inquire further of Shanklin about the nature and extent of Davion's injuries." *Id.*, 53 Va. App. at 689-90 (emphasis added).

Unlike *Ellis, supra*, and *Shanklin, supra*, the evidence in the case at bar was more than adequate for the jury to conclude that the Defendant acted knowingly and willfully in failing to provide appropriate medical treatment to Tuggle. Larry Collins, one of Tuggle's caregivers, testified that, when he first saw Tuggle on the morning of February 9th, "I was actually just like in shock. I was not prepared to walk in and see what I saw, you know. Joe had suffered a very bad burn. I did not know if it was from, you know, grease, fire. I don't know, but I knew Joe did not have no flesh on him from the back of his head, like all of his hair was melted and stuff [sic] to him, all down his shoulders. His butt was gone. All the way down, you know, he had burns all the way down to his feet." (Tr. at 164-65.) Tuggle's burns were bad enough that Tarpley sent Tuggle to the hospital by van without first seeking authorization from her superiors. When the Defendant, having called the van back, arrived at the group home to examine Joe's burns, Collins and another caregiver stood Tuggle up and dropped his sheet so that the Defendant could see Tuggle's wounds. There was conflicting evidence on this point, but the jury was entitled to believe Collins' testimony. Since the jury could find that the Defendant saw Tuggle in the condition described by Collins, the jury could infer that the Defendant knew that Tuggle's burns required emergent medical treatment at a hospital and that the Defendant failed to provide such treatment because he wanted to avoid an investigation by the Department of Social Services.

B. *The jury was entitled to find that the Defendant's abuse or neglect of Tuggle was a proximate cause of Tuggle's death.*

The Defendant argues that, even if it could be said that he abused or neglected Tuggle, there was insufficient evidence for the jury to find that the Defendant's acts or omissions constituted a proximate cause of Tuggle's death. Specifically, the Defendant maintains that, "[i]n order to support a conviction, the Commonwealth must prove that *with different treatment* after he was scalded in the bathtub, Tuggle would have lived, and not died." (Defendant's Memorandum, p. 7 (emphasis in original).) The Defendant relies primarily upon *Nebraska v. Muro*, 695 N.W.2d 425 (Neb. 2005), a case involving child abuse that resulted in the death of the child, for the proposition that the Commonwealth had "the burden to prove that survival

in the absence of the unlawful conduct would have been probable, i.e., more likely than not. . . ." *Id.*, 695 N.W.2d at 432. *Accord State v. Thornton,* 720 S.E.2d 572 (W. Va. 2011) (holding that there was sufficient evidence to sustain the jury's verdict on the basis of a physician's testimony that the child would have lived with earlier treatment). The Defendant avers that "[t]he most the Commonwealth has proven in this case is a slim possibility of survival with treatment at a burn center." (Defendant's Memorandum, p. 8 (emphasis omitted).) Citing a number of cases from other jurisdictions, the Commonwealth argues that *Muro, supra,* is not good law in Virginia and should not be followed. There is no case from either the Supreme Court of Virginia or the Court of Appeals of Virginia directly on point.

The Commonwealth was required to prove beyond a reasonable doubt that the Defendant's "abuse or neglect of Joseph Tuggle resulted in the death of Joseph Tuggle." *See* Instruction No. 11. In order to define more precisely this burden, the court gave the following instruction: "A proximate cause of a death is a cause that, in natural and continuous sequence, results in death. It is a cause without which the death would not have occurred." *See* Instruction No. 17. Since "[e]stablished principles of proximate causation are applicable in both civil and criminal cases," *Brown v. Commonwealth,* 278 Va. 523, 529, 686 S.E.2d 43 (2009), the court looks to the civil law for guidance. In *Whitfield v. Whittaker Mem. Hosp.,* 210 Va. 176, 169 S.E.2d 563 (1969), a medical malpractice case, the Supreme Court of Virginia stated as follows:

> When a physician's or surgeon's negligent action or inaction has effectively terminated a person' chance of survival, he will not be permitted to raise conjectures as to possible chances for survival that he has put beyond realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened if certain actions had been taken. *The law does not in all circumstances require a plaintiff to show a certainty that a patient would have lived had he been operated on promptly.*

*Id.*, 210 Va. at 184 (emphasis added). In *Brown v. Koulizakis,* 229 Va. 524, 331 S.E.2d 440 (1985), the Supreme Court of Virginia stated that, "in a death case, if a defendant physician, by action or inaction, has destroyed any substantial possibility of the patient's survival, such conduct becomes a proximate cause of the patient's death." *Id.*, 229 Va. at 532. The language "substantial possibility of survival" should be "employed as a decisional standard for the guidance of trial courts in deciding a motion to strike the evidence," and "[i]t teaches, in short, that, if a plaintiff's evidence has shown that the defendant's negligence has destroyed any substantial possibility of

the patient's survival, then there is sufficient evidence of proximate cause to go to the jury, and a motion to strike the evidence on that ground should be overruled." *Blondel v. Hays*, 241 Va. 467, 473-74, 403 S.E.2d 340 (1991).

In applying the above case law, the court remains firmly of the opinion that, based upon the testimony of both Dr. Whaley and Dr. Suzuki, the Commonwealth's evidence as to proximate cause was sufficient to create a jury question. As the Commonwealth put it in oral argument on the Defendant's motion to strike, "*mostly dead could be slightly alive.*" (Tr. at 865.) In the court's view, a twenty-five percent chance of survival represents a substantial possibility of survival, and the jury was entitled to find that the Defendant's abuse or neglect of Tuggle was a proximate cause of his death.

The motion to set aside the jury verdict is denied, and the court will enter an appropriate order. The sentencing shall take place on October 18, 2012, at 2:00 p.m., as scheduled.